Pearson, J.
 

 In the year ,1775, one Richard White died, leaving a last will and testament by which he gave the land of which he was seised to his five sons, to be equally divided between them, “but if either of them should die without an heir, his share to be divided between his living brothers.”
 

 By another clause in his will, he gives to his wife for her life, negro women Fanny, Silvy and Lucy, and after her death the said negroes and their increase to be equally divided “ among my five daughters, Mary, Sarah) Elizabeth, Drucilla and Nancy, and if either of them die without an heir, her part to be equally divided among her Other sisters.”
 

 At the death of the testator, his Wife and five daughters were all living. The wife died ; and then Mary died and the qegroes were divided between the four surviving daughters. Afterwards Sarah and Nancy died leaving children. Elizabeth is now also dead, without leaving’ a child. The question is, who is entitled to the negroes and their increase that fell to her share? Drucilla claims the whole as survivor ; the personal representatives of Sarah and Nancy claim a
 
 part;
 
 and the husband of Elizabeth, her administrator, claims the whole. It is evident that “heir” is not used in its technical sense, as reference is made to the sisters ; so it must mean child, as is frequently said in common parlance,
 
 *223
 
 one bas an “heir bom unto him,” meaning a child, or it may be taken in a larger sense, so as to include grandchildren or any descendant.
 

 Assuming that the words are sufficient to show an intention to' make successive'survivorships, by annexing the condition not only to the share of the one who should first die without leaving a child, but to the shares of all, it is settled that only the original shares are subject to the condition*, and the accrued shares Vest absolutely.
 
 Payne
 
 v. Benson, 3 Atk. 78.
 
 Bergrave
 
 v.
 
 Whitnick,
 
 2 Ch. Rep. 131.
 
 Perkins
 
 v. Micklewaite, 1 P. W. 274.
 
 Rudge
 
 v.
 
 Barker,
 
 Ca. Temp. Talbot 104.
 
 Ex parte West,
 
 1 Bro. Chan. Ca. 575.
 

 The only question then is, .are the words used sufficient to show an intention to make successive survivorships, and annex the condition to all of the shares, so as to make ail defeasible until the deaths of the legatees respectively, or is there some earlier period at which the legacies become absolute ?
 

 Six constructions are suggested : — 1. All of the shares are de-feasible and liable to pass over by successive survivorships, until the death of all of the daughters but one, whose estate then becomes' absolute. 2. All of the shares are defeasible arid liable to pass over at the death of any daughter without leaving a child, to the surviving sisters or sister, and the representatives of such as may have died, leaving a child, or to such representative alone, should such last daughter die without leaving a child. 3. All of the legacies are absolute at the death of the testator. 4. All become absolute at the death of the tenant for life, 5. Upon the death of the first daughter without leaving a child, the shares of. the others become absolute. 6. Upon the death of all but two, their shares become absolute.
 

 Before discussing these several constructions separately, we state this general proposition' bearing upon all of them. Where the intention is clear, the motive of a testator makes no difference; but where the intention is doubtful, and is the question in the case, motive has a most important bearing. Again, a further proposition is so well expressed by Mr, Smith, the, annotator on Feame, in his
 
 “
 
 Original view of Executory Interests,” in the production of which he had the aid of all the modem cases, that
 
 *224
 
 it may be well to give it in his own words, with the single remark that we concur in his reasoning and conclusion. Chapter 3, page 89, on the construing an interest to be absolute rather than
 
 defeasible
 
 — “ It would appear to be a general rule deducible from principle and from actual decisions, though not ennunciaied by authority, that in doubtful cases an interest whether vested or contingent, ought if possible to be construed as absolute or indefeasible in the first instance rather than defeasible. But if it cannot be construed to be an absolute interest in the first instance, at all events such a construction ought to be put upon the conditional expressions, which render it defeasible, as to_confine their operation to as early a period as may be, so that it may become an absolute interest as soon as it can fairly be considered to be so. For, 1st, this would seem clearly deducible from the well known rule, that conditions are odious and shall be construed strictty, a rule which would appear to apply to those conditions which are termed in a preceding page, mixed conditions, as well as to conditions which are simpty destructive. For if it applies to conditions subsequent, which are simpty destructive, and upon which an estate is to be defeated, and made to revert to the heir who is favored by the law, it would seem to apply also to those conditions which are both destructive and creative, and upon which an estate is to
 
 be
 
 divested, and a new estate is to arise in favor of another person, by way of conditional limitation. 2. The person claiming under a prior limitation, and his children being the primary objects of the grantor’s or testator’s bounty or consideration, and the persons claiming under the limitation over, being only secondary objects of such bounty or consideration, it is of course reasonable to lean in favor of the primary objects, by construing their interest to be absolute in the first instance, or as nearly as by fair construction, it can be considered to be so, rather than to lean in favor of the secondary objects, by construing the interest of the primary objects to be defeasible. 3rd. The law favors the free uncontrolled use and enjoyment of property and the power of alienating, whereas the defeasible quality of an interest tends most materially to abridge both.”
 

 It is evident that each of the daughters are respectively the primary objects of the testator’s bounty, in regard to her original
 
 *225
 
 share ; and with regard to what might accrue by a share being defeated, the recipients are secondary objects of his bounty. It is also evident, that the primary intention is to give a share of the property itself, and not simply to lend or give the use of it. So far the way is clear. The difficulty is presented by the provision in case of a death without leaving a child. The testator was minifestly
 
 inops consilii,
 
 his intention is not expressed fully and clearly, and this is one of the many cases in which Courts are left to grope their way in the dark in search of an intention, when in all probability the testator had not formed any definite intention, or at least had not run it out to all its consequences.
 

 In support of the first construction, the argument is, the testator had a further intention, which was to confine this fund to the daughters ; and as upon the death of one of them without a child, the sons would come in under the statute of distributions, the object of the provision was to exclude them, an<| to give the share of any one of the daughters so dying to her “orther sisters.” The condition is annexed to the shares of all indiscriminately, to one as well as.to another, and to carry out the intention it is necessary that there should be a succession of survivorships, until the death of all of the daughters but one, when the condition must be at an end, in as much as there is no further limitation over ; so that the intention expressed with legal precision would be in these words, “ should anyone or more of my daughters die without leaving a child, the share or shares of such as may so die shall go to her surviving sister or sisters.” The reply is, 1st, The words used are in the singular number — -“should any one die,” &c., “
 
 her
 
 share, &c., her other sisters,” and although the condition is annexed to all indiscriminately in the first instance, there is nothing to denote an intention that it should continue and be readyfo defeat the estate of all of the others except the last. The words are satisfied by operating upon the share of the one who died first without a child, and there is nothing to create a succession of sur-vivorships.
 

 2nd. No case is to be met with in the books, (stated fully, and not simply put to illustrate a particular position, as that the accrued share is not subject to the condition,) in which a succession of survivorships is allowed, without some words in the plural
 
 *226
 
 showing such to be the intention
 
 ;
 
 as “ their sisters,” or the “ share or shares of such as die, &c., to the survivors or survivor.”
 

 3d. Favoring a condition, by extending it beyond tbe words, or at all events beyond a
 
 necessary
 
 implication, is opposed by ail an'alogy. For instance, there is no reason why the accrued shares should not be defeated and pass over, as well as the original shares: indeed, if left to conjecture, we should say it is in all cases the intention to put both on the same footing, yet when the words require a succession of survivorships, the authorities uniformly refuse to extend the condition by implication, and confine it to the very words “the share or shares of those who die, &c,” to wit, the original share or shares, even at the expense of much inconvenience and confusion.
 
 Again,
 
 cross remainders by implication are not allowed in deeds ; originally they were not allowed in wills where there were more than two devisees, “because of the uncertainty and inconvenience.” Cro. Jac. 655. In which case Doddridge, J., says “it was never seen in any book where an estate is limited to divers, that there should be cross-remainders by implication.” The modern cases however relax somewhat, and the rule now seems to be that the presumption is in favor'of cross-remainders by will between two, but when between more (Iran two, the presumption is against them. Such being the case in regard to
 
 remainders,
 
 of course it must be so in regard to ex-ecutory bequests, because the reasons apply with more force. The latter are
 
 conditions which defeat estates and pass the property to strangers.
 
 The property is of a shifting and transitory nature, whereby the confusion growing out of a separation of the original and accrued shares, in case of four successive survivor-ships, would be increased tenfold ; as would also be the incove-nience resulting from the fact that none of the shares would be absolute until after the death of the legatee, and none of the children of the testator
 
 during their lives wmld have the ownership
 
 and right of disposition. In the case of slaves, the inconvenience would amount not oirly to a deprivation of the ownership, but in some instances positively to a
 
 charge.
 
 The interest of money and the increase of stock belongs to the present owner, but the increase of slaves passes over with the principal: so one taking a defeasible estate in a negro woman, instead of a bounty has a
 
 *227
 
 charge, and has to raise young negroes for another, unless so fortunate as to leave a child surviving, and then the absolute ownership comes too late to be enjoyed by the primary object of the testator’s bounty.
 

 4th. The words used, adopting the construction contended for, in some respects go beyond, and in others fall short of the purpose of confining this fund to the daughters and excluding the sons, which is inconsistent with the assumption that such was the intention. They go beyond it, by putting a greater restraint upon the legacy to each of the daughters, than was necessaiy to accomplish the object, for the sons would not take under the statute of distributions, as well were a daughter married as when she died leaving a child, and the supposed intention would have been answered by allowing the daughters to have the property subject to the condition that if one or more happened to die without leaving a child, or without having married, it should go to her other sisters or the children of such as were dead, to the exclusion of the sons.
 
 They fall short of it.
 
 The accrued shares are not disposed of, but are left exposed to the claim of the sons. The
 
 original shares
 
 as w,ell as the accrued share of the surviving daughter, is left exposed to the claim of the sons, if she should happen to die without a child, unless she marries or otherwise diposes of the property; for there is no limitation over to the children of the deceased daughters, and the omission of this limitation over, is the only ground upon which the'surviving, daughter now claims the whole, and further claims that her estate is now free from the condition, and has become absolute.
 

 5th. This construction is totally inconsistent with the admitted facts, that in regard to the original shares, each daughter is the primary object of the testator’s bounty, and that it was the primary intention to give the property itself, and not simply to lend or give the use of it. The amount of it is, to give to the proviso the effect of so clogging all the legacies, as to deprive all the daughters save one, of the ownership and right to dispose of the property during their lives, and that one is to be so deprived until the death of all the others. That is, the first takers, the primary objects of the testator’s bounty are all to starve, as far as regards this property, and instead of the property being given, only the use of
 
 *228
 
 it is given, with a chance of having the absolute property after the donee is dead, when, it cannot be enjoyed by her. To whose benefit does this restraint of the ownership enure? To the husbands, not the children (for there is no limitation over to them,) of such of the daughters as die leaving children, and to the daughter who happens to live the longest, whether she has a child or not. The "motive assigned is not sufficient to support a construction leading to such results. It should be borne in mind, that this is not a limitation to several children with a condition that if one or more should die under the age of 21, and unmarried, their shares should go to the survivors or survivor, which is a very common limitation in wills, and a very reasonable one, for the ownership is restrained only until the child has discretion or marries, and should be settled in the world. The restraint being a reasonable one, it is probable the testator intended to apply it to all of the children under like circumstances, and the Court might incline, in the absence of express words, to imply a succession of survivorships, from the fact that the same reason was applicable to all. But according to the construction contended for in our case, the restraint is general, and extends to the whole lifetime of all the daughters save one, and even extends to her until all the others are dead. This is unreasonable and inconsistent with the idea of a gift of the property to the first takers, and is therefore improbable, consequently the Court cannot extend it by any implication.
 

 That a father
 
 under the show of a gift
 
 of negroes to a child, should have an intention so to restrain it, as not to give the ownership during the child’s whole life time, notwithstanding arrival at full age, marriage and birth of a child, is so unnatural that express words should be used to show it. In support of the second construction, the argument is, besides a gift to his daughters the testator had a further intention of giving a preference to such of them as performed the condition, and died leaving a child. To effectuate -this intention the Court will imply a succession of limitations over, upon the death of one or more of the daughters without a child, to the others and such as had died leaving children, which is an executory bequest where the person is certain, transmissable to the personal representative, so that the fact that
 
 *229
 
 Sarah and Nancy are dead, offers no impediment to the vesting of a part of the share of Elizabeth in their representatives, and of the whole of the share of Drucilla, if she dies without a child. The argument fails, because there are no words showing an intention to give a preference to such of the daughters as died leaving children, except to the extent of making the shares absolute at their deaths. The same considerations which forbid an implication of a succession of survivorships, likewise forbid an implication of a succession of limitations over. It is unnatural and therefore improbable, and consequently cannot be implied, that a father intended to deprive all of his daughters of the ownership of the property which he professes to give them during all of their lives, and to allow all of them to starve, (for the estate does not become absolute upon the birth of a child, as it might die before its mother,) for the mere purpose of giving a preference to such as might have children. There is this further objection : if the words
 
 “
 
 other sisters ” do not refer to the death of onej so as to be confined to the survivors, and is allowed to take in the others also, there is nothing to exclude such as had died without a child, which is absurd.
 

 Having rejected the first two constructions, it follows that one of the others must be .the true one, and as the defendant is entitled to the whole of his wife’s share under either, it is not necessary to decide between them ; and we might content ourselves by saying that the legacies became absolute at the death of the testator, or at the death of the widow, or at the death of the first daughter, or, at all events, when all died except two. But it may be proper to discuss them, as it may tend to illustrate what has been said in reference to the others, and to elucidate the whole subject.
 

 An examination of the cases and a consideration of the probable intention of the testator, when it is not clearly expressed, and of the policy of the law, leads to this conclusion : Yfhen the estate is defeasible, and no time is fixed on at which it is to become absolute, and the property itself is given and not the mere use of
 
 it, if there be any intermediate period,
 
 between the death of the testator and the death of the legatee, at which the estate may fairly be considered absolute, that time will be adopted, for the reason that, while
 
 on the one
 
 hand
 
 testators are not apt to
 
 have'
 
 *230
 
 reference to what may happen between the making of the will and their own death, inasmuch as such an event may be provided for by a codicil or another will; on the other, it is highly improbable that they ever mean, after- giving the
 
 property itself,
 
 to make the estate defeasible during the entire lifetime of the legatee, and in effect give merely the interest or use of it, which is inconsistent with the prior gift of the property, and deprives the primary object of bounty of the right ever to exercise full ownership-over
 
 it
 
 — e.g., “A gift to A. if he arrives at the age of 21, but if he dies without leaving a child, the property is to go to B.; the intermediate period is adopted, and the gift is absolute at his age of 21.”
 
 Horne
 
 v.
 
 Pillaus,
 
 2 M. & K. 22. “A gift of the dividends of stock to a wife for life, and of the stock itself at her death to her two daughters ; but if either should die unmarried and' without a Child, the survivor should take the share of her so dying ; and if both should die unmarried and without a child, their shares should go to a son
 
 —held,
 
 That the estates of the daughters would have become absolute at the death of the wife ; but as she died in the lifetime of the testator, their estates became absolute at his death.
 
 Laffer
 
 v.
 
 Edwards,
 
 3 Mad. 210.
 
 Clarke
 
 v.
 
 Gould, 7
 
 Sim. 197.
 
 Lejune
 
 v.
 
 Lejune,
 
 2 Beav. 701. Smith’s Original View, 342.
 
 If there be no intermediate period,
 
 and the alternative is, either to adopt the lime of the testator’s death or the death of the legatee generally, at some time or other whenever it may happen, as the period at which the estate is to become absolute, the former will be adopted, unless there be words to forbid it, or some consideration to turn the scale in favor of the
 
 latter
 
 — e.g., A gift to A., but in case of his death to B., the time of the testator’s death is adopted as the period at-which the bequest to A. becomes absolute.
 
 Hinckley
 
 v.
 
 Simmons,
 
 4 Ves. 160.
 
 Cambridge
 
 v.
 
 Rent,
 
 8 Ves. 12.
 
 Omany
 
 v.
 
 Bevan,
 
 18 Ves. 291.
 
 Crigan
 
 v.
 
 Barn, 7
 
 Sim. 40.
 

 A gift to A., but in case he dies leaving a child, then to such child, if he dies without leaving a child then to B., becomes absolute at the death of the testator.
 
 Montague
 
 v.
 
 Nucilla,
 
 1 Rus. 165;
 
 Laffar
 
 v.
 
 Edwards,
 
 and all the cases,above cited, support the case put by their reasoning, and it is supported by the very high authority of Mr. Smith, who cites and comments upon all of
 
 *231
 
 the cases, and announces this conclusion ' (page 347):
 
 “
 
 Even when the gift over is not merely dependent on the simple event of death, but is to take effect in case of the death leaving children,” or in case of the person
 
 “
 
 dying unmarried and without issue,” the event will be construed to mean, not a death generally at some time or other, but a death in the testator’s lifetime, or at some other particular time, if the
 
 fund or property itself
 
 and not merely the interest or income is given to the person whose death is spoken of; or if it is not to vest till a future period, and the dying may fairly be referred to a dying before that period; or if for any other reason it does not appear that the testator intended to refer to death generally. Putting out of view the policy of the law, which favors the absolute enjoyment and right to dispose of property, and admitting for the sake of argument, that no intermediate period can be adopted so as to avoid an issue, between the time of the testator’s death and that of the legatees, as the period when the legacies are to become absolute, the weight of the authority is decidedly in favor of the former, and so far from there being any thing to make it appear that the testator intended to refer to the death of the legatees generally, the words used and all the circumstances point to his own death. 1. The'property itfelf is given, and not the interest or income or use of it merely, which in the case of negroes is often a charge, and not a bounty.
 

 ' 2d. To deprive all of his daughters of the ownership during all the days of their lives, is inconsistent with the fact of their be--ing the primary objects of his bounty.
 

 3d. No limitation is made to the children of such as have any, and no limitation over is made in case all should die without children, so that no sufficient motive appears for a restraint so sweeping and unlimited.
 

 4th. In directing the limitation over upon the death of any one without a child, words in the singular number only are used — . “
 
 her
 
 ” share is to be divided between
 
 her
 
 other sisters. These words are very appropriate if he had reference to the time of his own death, and intended simply to guard against a lapse by a death in his own lifetime, for it was probable that
 
 one
 
 might die without a child in his lifetime, but it is not probable that more than one, or all would die before him.
 

 
 *232
 
 5th. If he had said
 
 u should one or more
 
 die without a child,” using words in the plural, or if he had made the vesting of the legacies depend upon arrival at age and marriage, this would have been appropriate as referring to the death of the legatees generally, or to some period after his death, and would have excluded the idea of a reference to his own death, but he Omits to do either.
 

 There is then a gift, a condition, and a limitation over, all expressed in words appropriate to a reference to the testator’s own death. No limitation over and no words are used appropriate
 
 to
 
 a reference to any other period. Why then shall not that period be adopted which explains the whole matter, and malees the restriction, upon the gift natural and consistent, in preference to a period in reference to which no appropriate words are used, no limitations such as are common or proper are inserted, and the adoption of which confounds the whole matter, and makes the restriction upon the gift unnatural and inconsistent? This is a much stronger case than any to be met with in the-books. Here are five daughters, and unless the testator’s death be adopted as the period at which the legacies are to become absolute, no effect can be given'to marriage or the birth of a child. Nothing short of death leaving a child can confer the ownership. If the testator’s death be not adopted as the period for the legacies to become absolute, the rule laid down by Mr. Smith requires the adoption of the earliest period' afterwards, which is not forbidden by the words, or a necessary implication. This period is presented at the death of the tenant for life, or when the first daughter died without a child. The words are then satisfied, and, so far from there being a necessary implication to forbid it, there is a necessary implication requiring it. To avoid the conclusion that the testator was so unreasonable and unnatural as to give property to his daughters and deprive them of the ownership during their whole lifetime, for no other reason that can be suggested except to giv® the shares of those dying without a child to the sister who happened to live the longest, or to the representatives of those who died leaving a child. As soon as the words ,are satisfied, the policy of the law requires that the legacies should be considered absolute, and it will not presume in favor of cross-executory bequests among five, because of the confusion and inconvenience above
 
 *233
 
 pointed out,. This construction avoids all confusion and much of the inconvenience which would result from having no limit save the death of all but one. It satisfies the words of the will, makes the meaning sensible and intelligent, and accounts for the omission of limitations over. If the period of the death of the testator, and of the death of the widow, and of the death of the daughter who first died without a child are rejected, then the construction which considers the legacies of the two surviving sisters absolute at the death of the third sister, must be the true one for the reasons above given, and for the further reason that the estates cannot be considered defeasible any longer without doing violence to the words of the will. The division is to be among
 
 her other sisters:
 
 these words cannot be applicable when
 
 only two
 
 are left, for, upon the death of one of them there can be no division,, nor can the property go to the other sister under the word
 
 sisters.
 
 So it would be necessary to add
 
 “
 
 surviving sister.” This would be a strained construction, which as we have seen, the policy of the law and all analogy furnished by the cases forbid.
 

 The devise to the five sons, although expressed in different words, involves the same question, and furnishes no aid in support of the one construction or the other.
 

 Our attention was called by Mr. Lanier to many cases in our own Court. We have given them a careful consideration. Most of them show that words in the plural were used, so as to leave no room for implication ; as his, her, or
 
 their
 
 shares, the
 
 shares of these
 
 so dying to go to the
 
 survivors
 
 or
 
 survivor.
 
 Other cases • confine the restriction upon the gift, to arrival at age or marriage. No case was cited where the point was made and attention called to it, in which it is decided that the Court will by implication, make a succession of survivorships, and so .extend a construction as to convert a gift into a loan, and reach the inconsistent, unnatural, and improbable conclusion that none of a testator’s chidren to whom he gives slaves are to exercise the right of ownership, except the one who may happen to live the longest, unless some particular purpose is to be effected by the restriction.
 

 Mr. Lanier relied mainly upon the case of
 
 Fortesque
 
 v.
 
 Satterthwaite,
 
 1 Ire. 569. The point considered theiewas the remoteness of the limitation j as it is cited for a different purpose we
 
 *234
 
 liave examined the original papers. It appears there was a particular purpose, viz., to exclude Polly Satterthwaile, to whom a small
 
 legacy is
 
 given, and the testator then
 
 adds
 
 — “
 
 It is
 
 my wish that she have neither part nor lot in my property besides,” and “in case either of the said children die without heir lawfully begotten, it is my Wish that the property belong equally to the children then living Whether James,
 
 Nancy
 
 or
 
 Sally.”
 

 Cox
 
 v. Hogg, 2 Dev. Eq. 121, discusses this question and supports our conclusion. There the particular 'purpose was to exclude Lucy Drew.
 

 It must be declared to be the opinion of this Court, that upon the division, the slaves allotted to Elizabeth vested absolutely.
 

 Peh Curiam. Decree accordingly.