AREY GRAY v. DAVID F. WEST et als.

*Wills—Charge of a legacy on hand.*

1. Technical rules of construction and decided cases serve only as aids rather than as binding rules in the construction of wills. The construction of the will depends largely upon the circumstances of the testator as they appear from the will itself.

2. The meaning attributed by the testator to words and phrases in a will, when it appears, must prevail, however different this may be from the meaning ordinarily applied to such words and phrases in other wills.

3. Where a will provided "that A. G. should have her support out of the land," *It was held*, under the circumstances of the will, not to be a charge on the *corpus* of the land, but only the right to receive a support out of the rents and profits.

(*Wall* v. *Williams*, 93 N. C., 327, cited and approved).

CIVIL ACTION, tried before *Graves, Judge,* at Fall Term, 1885, of the Superior Court of DAVIE county.

The action was instituted for the purpose of having the legacy of the plaintiff declared a charge on the lands devised by the testator.

The facts fully appear in the opinion.

There was a judgment for the plaintiff, and the defendants appealed.

*Messrs. Clement & Gaither,* for the plaintiff.
*Mr. D. M. Furches,* for the defendants.

MERRIMON, J.   It appears that James Gray died in the county of Davie in the early part of the year 1873, leaving surviving him neither wife nor children, and leaving a last will and testament, which was duly proven, and James Gaither qualified as executor thereof.

By this will the testator disposed of considerable estate, consisting of both real and personal property.   The parts of the will to be construed and necessary to be set forth here, are as follows:

"9th. I give Margaret Forcum and Emily Clampet and Mary Clampet, the land I now live on and all my property that I have on the land.

"10th. Arey Gray is to have her support out of the land.

"11th. I give Milly Gray and her children one mule, one cow, five sheep.   Turner Gray is to tend the land and keep the fences up by giving the third of the produce."

The *feme* defendants are the persons named in the ninth clause of the will above recited, Emily Clampet having, since the death of the testator, intermarried with the defendant David West, and Mary Clampet with the defendant John Johnson.

The *feme* defendants, as was admitted, were the natural children of Alexander Gray, deceased, who was the brother of the testator, and after the death of their father they lived with and were cared for by the testator, as if they had been his own children, until the time of his death.

Arey Gray, the plaintiff, mentioned in the tenth clause of the will, had been a faithful slave of the testator in time past, before his death, and she was advanced in life and somewhat infirm.   It appears that she had some means of support of her own, but not sufficient to make her comfortable.

On the argument before us, the counsel for the plaintiff insisted that the "support" provided for her in the will must be treated as a charge—a lien—on the land, and it might be sold to pay arrearages for her support, as directed by the judgment of the Court below, and cited numerous cases, none of them, however, directly in point, to support the view contended for by him.

In interpreting wills, it is the duty of the Court to ascertain and give effect to the intention of the testator. Technical rules of construction, and decided cases, serve only as aids rather than as binding rules in the discharge of such duties; the meaning of every will and its several parts depends largely upon the circumstances of the testator as these appear from the will itself. The meaning attributed by him to words and phrases, when it appears, must prevail, however different this may be from that ordinarily implied by such words and phrases in other wills or other written instruments. The sole and controlling purpose is to ascertain what the testator, whose will may be under consideration, intended.

It is plain in this case, that the testator intended by the ninth clause of his will, as his principal purpose, to devise to the *feme* defendants the tract of land—the whole of it—on which he lived at the time of his death. The terms employed are broad and strong, and without qualification.

By the tenth clause he did not devise any part of the land to the plaintiff, but made a provision that she should "have her support out of it."

This provision does not imply that she might have the land sold, or parts of it, from time to time, so that she might, from the proceeds of such sales, get her "support" out of it; it was no part of the purpose to make the provision—the "support"— a lien upon the land, and subject it to sale. Such an interpretation would tend to defeat, and might possibly defeat, the chief and primary purpose of the testator, to devise the land to the *feme* defendants, and this cannot be allowed if a more reasonable one can be given. It seems to us that the obviously reasonable

interpretation of the two clauses mentioned is, that the testator intended to provide that the plaintiff should have her support out of the net annual product—the rents and profits of the land —that out of these she should get her "support;" no matter who might make or receive them, the support was intended to be a charge upon them, and she had the right, as against the executor, who it seems received them until 1878, the defendant or any other person, to have so much thereof as might reasonably be necessary for that purpose. Her right was not against the *feme* defendants, at all events, it was only so in case they made or were in receipt of the rents. It was not the intention that the plaintiff should get her "support" from them, but "out of the land," that is, out of the rents of it or the use or occupation thereof. She misapprehended her right in looking to them, instead of the rents directly, whether in their hands or in those of the executor or some other person.

This view is strengthened by the provision in the eleventh section of the will, that "Turner Gray is to tend the land and keep the fences up by giving the third of the produce." The testator thus recognized and treated the lands as productive of rents, and as affording, from year to year, means—"produce"— out of the land for the "support" of the plaintiff, as well as for the purposes under the will.

If it had turned out that, for any cause, neither the *feme* defendants, nor the executor, nor any other person would cultivate the land and make rents, so that the plaintiff might have her "support" out of the same, in such case, she might have had her remedy through the courts.

The Court might have directed the land to be leased for cultivation, so as to make rents, or she might have been allowed to cultivate it, or a sufficient part of it, herself, as the Court might allow; or she might have had such relief as the Court would deem her entitled to.

The will does not specify any particular sum of money or supplies of any kind for the "support" of the plaintiff. The supply, whatever it might be, was left to depend upon her wants

growing out of her physical condition, and her circumstances, pecuniary and otherwise. It was not intended that she should receive annually, or at shorter intervals, a sum of money or other suitable supplies, whether she needed them for her support or not—nor was it intended that her estate should be enhanced, or that she should have a legacy at all events, equal to a sum of money sufficient for her "support." The purpose was that she should have a "support out of the land" equal to the supply of her reasonable wants and necessities, in view of her condition and station in life. The provision was for her personally—not for others that might be about, and dependent more or less on her.

If she had abundance, it might be questionable whether or not she could get anything "out of the land;" if she had not enough for her comfortable "support," then the deficit must be supplied, and the supply would depend upon her reasonable wants; if she were homeless, she would be entitled to be supplied in a proper way with a comfortable place to live; if she were stout and strong, her demands would be less; if she were infirm, helpless, sick, then she would be entitled to more. If those interested in the land would not supply such measure of comfortable support, then the Court would allow it out of the rents of the land. She might have applied for redress long ago—that she did not, was her own neglect or her misfortune; if she accepted promises from the *feme* defendants that were broken, that was also the fruit of misplaced confidence. The courts were open to her at all times. *Wall* v. *Williams, ante,* 327; *Ellerbe* v. *Ellerbe,* Spears Eq. (S. C.), 328.

It follows that the support to which the plaintiff was entitled was not a charge upon the land in the sense and way contended for by her, and it further follows that the *feme* defendants were not amenable to her for her "support" for the time they did not receive the rents and profits thereof. The judgment is erroneous and must be reversed and further proceedings had in the action in the Court below in accordance with this opinion. To that end let it be certified to the Superior Court. It is so ordered.

Error.                                                          Reversed.