A. U. KORNEGAY v. JOHN R. MORRIS.

(Decided April 5, 1898.)

*Will, Construction of—Devise—Life Estate—Limitations — Contingent Executory Devise — Cross Remainder.*

A testator gave to his wife F, for her life, considerable property, the remainder in which, in another clause, he gave to his son W in trust for his other sons, J and A. A subsequent item provided "If my sons J and A should either one of them die without legitimate offspring my will is and I do hereby direct that that portion of my estate given to the one so dying shall go to the son still living, and if both shall die without legitimate offspring, the income arising from both their portions shall go to my wife F during her life or widowhood, and in the event of the marriage or death of my wife F ۵then the portion set aside for them to go to my son W and his legal representatives." A guardian for A was named in the will. Subsequent to the death of the testator, J died without issue and thereafter W also died without issue. *Held,*

(1) That it was clearly not within the contemplation of the testator that the conditions upon which the limitations should take effect should be fufillled during his life-time, but whatever doubt there might be as to such intention is settled by the provisions of Section 1327 of *The Code.*

(2) That J and A took cross-remainders and, upon J's death without issue, his part went to A.

(3) That A being alive, without children, the estate of W was a contingent executory devise which, upon W's death without issue, descended to A, his only heir-at-law.

(4) That the widow F has a beneficial estate in the property, contingent upon A's dying without issue before her death or marriage.

CIVIL ACTION for specific performance of a contract concerning land, tried before *Timberlake, J.,* at Janu-

ary Term, 1898, of WAYNE Superior Court, upon an agreed statement of facts, the substance of which is set out in the opinion.    There was judgment for the plaintiff and defendant appealed.

*Messrs Allen & Dortch* for plaintiff.
*Messrs. Aycock & Daniels* for defendant (appellant).

FURCHES, J.: In May, 1883, James F. Kornegay made and published his last will and testament, and in August of that year he died; that said will, after the death of the testator, was duly admitted to probate in Wayne county, and the executor, W. F. Kornegay, therein named, qualified; that the testator left him surving a widow, Frances E. Kornegay, and three sons, the said W. F., J. J. and A. U. Kornegay, who are the legatees and devisees mentioned in the will, W. F. being the oldest, and some 50 years of age, and A. U. the youngest and not 21 when his father, the testator, died; J. J. has since died, and since his death W. F. has died, and A. U. has reached his majority of 21 years.

That since the death of J. J. and W. F., and since the said A. U. reached his majority, the complaint *alleges* that he has bargained and sold to the defendant Morris a lot in the city of Goldsboro for $300; that the plaintiff executed a bond for title to said lot, and the defendant executed his note for the purchase money, which is now due; that the plaintiff has tendered to the defendant a deed conveying said lot to the defendant, and that the defendant refuses to pay the same.

The defendant answers and says that he is ready, able and willing to pay for said lot according to the contract, if he can get a clear, indefeasible title thereto,

but that said lot is a part of the real estate owned by the said James F. Kornegay, and disposed of by him in the 14th paragraph of his will; and that the defendant is advised that the plaintiff cannot make and convey to him such title. The widow, Frances E. Kornegay, is still living.

This makes it necessary that this section 14 of said will shall be construed, so far at least, as to determine the question presented—whether the plaintiff can make a clear indefeasible title to said lot, so contracted for and sold to the defendant. It is stated that W. F. Kornegay died intestate without leaving issue or any lineal descendants, and leaving the plaintiff his sole heir.

The testator gave to his wife, Fanny, considerable property for life, which, in the 11th clause of his will, he gave to his son W. F. in trust for his sons, John J. and Albert U. after her death. And in the 14th item he provides as follows: "If my sons John and Albert should either one of them die without legitimate offspring, my will is, and I do hereby direct that that portion of my estate given to the one so dying shall go to the son still living, and if both shall die without legitimate offspring, the income arising from both their portions shall go to my wife Fannie E. Kornegay during her life or widowhood, and in the event of the marriage or death of my wife Fanny, then the portion set aside for them to go to my son W. F. Kornegay and his legal representatives."

It is manifest from these provisions that it was not within the contemplation of the testator that these limitations should be fulfilled during his life time. It cannot be that, when he provided a guardian for his son Albert, he expected Albert to die in his life time, nor can it be that, when he made a provision for his

wife, to be void upon her marrying, he could have expected her to marry during his life time.   So that *Hilliard* v. *Kearney*, 45 N. C., 221; *Burton* v. *Conigland*, 82 N. C., 99, and other cases cited for the purpose of establishing this position, are not in point.   None of the cases cited conflict with this opinion, as to the time not being limited to the testator's death when the conditions or contingencies should happen.   But if there had been any doubt as to this (and we think there is not) the statute of 1827, now Section 1327 of *The Code,* and the case of *Buchanan* v. *Buchanan*, 99 N. C., 308, has in our opinion settled all doubt on this point.

The devisees, John J. and Albert U., took cross remainders, and John dying and leaving no issue, his part went to Albert.   *Galloway* v. *Carter*, 100 N. C., 111; *Spruill* v. *Moore*, 40 N. C., 284.

But Albert is still living and has no children, which made the estate of W. F. Kornegay a contingent executory devise.   The person (W. F.) being certain, but the event upon which his estate depended, being uncertain, it was such a contingent estate as might be transmitted by descent.   2 Fearne on Remainders, pages 28, 30, 433; *Fortescue* v. *Satterthwaite*, 23 N. C., 566. And W. F being dead without issue, and leaving Albert his only heir at law, this contingent estate descended and vested in Albert.

But if Albert dies without leaving issue, the widow, Fanny E., is to have the "income" from the whole estate left John and Albert, until her death or marriage. This gives her a contingent estate in this property.   29 Am. & Eng. Enc. of Law, 404.   Her estate is also contingent, depending upon the death of Albert without leaving issue.   This contingency may never happen, and she may never receive any benefit from this estate.

But if Albert should die, without leaving issue, before she dies or marries, she may then enforce the collection of the rents arising therefrom, upon or against the lot itself, as this income would be a lien on the property itself. *Gray* v. *West*, 93 N. C., 442.

Error.—Reversed.

FAIRCLOTH, C. J., dissenting: It is agreed that in considering the construction of wills the whole instrument must be considered, and that the primary intent of the testator, when it can be seen, governs the case. It appears from the will and the agreed facts that the widow is amply provided for during her life; that the ultimate remainderman, W. F. Kornegay, was over 50 years of age, and was reputed to be a man of large means; that John Kornegay was of feeble intellect, and that Albert was of tender years, was intelligent and of good habits. From these undisputed facts I infer that John and Albert were the prime objects of the testator's intent. John having died without issue of course his interest survived to Albert.

The principle of allowing a devise to vest absolutely at the earliest period, consistent with the will, relieves the estate of conditions and avoids the doctrine of perpetuity and executes the main intent of the testator, when not expressly forbidden by words or controlled by peculiar circumstances.

The case of *Hilliard* v. *Kearney*, 45 N. C., 221, was well considered and has been followed ever since. The application of the principles of that case is the only question in subsequent cases. There the gift was to five sisters, and "if either of them die without an heir, (construed to mean child or issue) her part to be equally divided among her other sisters.' It was held that

upon the death of the first sister without issue, the life
tenant having died, the estate became absolute to the
others as tenants in common and the doctrine of succes-
sive survivorships to the last was not allowed.  The
principle there announced is that when there is an inter-
mediate period, between the death of the testator, and
that of the legatee, as was the case in *Price* v. *Johnson,*
90 N. C., 592, to-wit, "At the age of 25 years," that
time would be adopted, but if there be no such time,
then the estate will become absolute at the death of the
testator, "unless there be words to forbid it, or some
consideration to turn the scale in favor of the latter,"
i. e. the death of the legatee. · There are certainly no
words in the will forbidding such a construction and I
can see no facts in this case to lead us to a different
conclusion.  If it be urged that this view cuts off the
income to the widow for life, and the ultimate contin-
gent remainder, the answer is that that is the result
only of giving effect to the primary intention of the
testator, which appears from the will as before stated.
The case of *Davis* v. *Parker,* 69 N. C., 271, rested solely
on the authority of *Hilliard* v. *Kearney, supra.*  The
testatrix said, I give the balance of all my property to
Jno. Thomas Hollowell and his heirs "and if he should die
and leave no lawful heirs of his body, then in that case,
I give Celia Mayo the sum of two thousand dollars, to
her and her heirs, and all the balance of my property I
give to my nearest relations, all except Joshua Davis,"
etc.  John Thomas Hollowell died intestate, without
issue.  It was held that Hollowell's estate became abso-
lute at the death of the testatrix.  In that case the
remainder was to the "nearest relations" of the testa-
trix, and that would have been the declaration of the
law in *Hilliard* v. *Kearney,* cited above, if successive

survivorships had been allowed and the last surviving sister had died without issue.

In one case the will points to the heirs generally and in the other the law would have designated the *same class* as the ultimate takers of the estate. *Davis* v. *Parker, supra,* seems to fit the case before us.

I take another view. There is certainly no interest left in the testator and no possibility of any reverter to him or his heirs, as was the case in *Trexler* v. *Holler,* 107 N. C., 617. The interest of W. F. Kornegay is a good contingent remainder, the person being certain, and is not too remote, even if it could not become a vested estate, as my brethren think, until the death of the widow. *Baker* v. *Pender,* 50 N. C., 351. It being admitted by the agreed facts, that the plaintiff is the only brother and heir at law of the remainderman I do not see why the estate in remainder should not descend to the plaintiff and become vested. *Code,* 1281. That would be the same result as that in my first contention, vesting an absolute estate in the plaintiff. I do not think that the provision that the widow shall have the income of the land during her life, if she should live after the death of the legatees without issue, conveys to her any estate in the land. *Burton* v. *Conigland,* 82 N. C., 99.

My conclusion is that, at the death of the testator, the estate vested absolutely in John and Albert and, by the death of the former, his estate survived absolutely to the latter. If that was not so, I am much inclined to the opinion that upon the death of the remainderman without issue, his interest descending upon the plaintiff, his only heir at law, gave him a fee simple estate.