CORNELIA T. JESSUP AND JOSEPH T. NIXON v. THOMAS NIXON ET AL.

(Filed 27 April, 1927.) ˙

**Estates—Wills—Contingent Remainders—Vested Interests—Descent and Distribution.**

A devise of an estate to the widow of the testator's son during her life, "but in case she dies the property to go to her surviving children": *Held,* the estate goes to such children surviving the widow or tenant for life, and where her son dies during its continuance his heirs at law cannot claim under him by descent.

APPEAL by plaintiffs from *Grady, J.,* at August Term, 1926, of PERQUIMANS.

Controversy without action on an agreed statement of facts. Francis Nixon, Sr., died on 26 November, 1887, at the age of 89 years, leaving a last will and testament dated 27 July, 1887, which was duly admitted to probate on 30 November, 1887. The second item, as drafted, was as follows:

"I give to my son Thomas Nixon the plantation whereon he now lives, containing about 275 acres, more or less, and in the event of his death before that of his wife, Cornelia, I loan the use of the plantation to her during her life or widowhood, but should she marry, I give the lands to the surviving children of Thomas Nixon and Cornelia. See deed of R. F. Overman, assignee of the same. This includes piece of land on north side of Henby Road."

Lines were drawn across this item, and it is contended that it was canceled by the testator after the death of his son Thomas.

Item 14 is in these words:

"I give to Cornelia Nixon, widow of Thomas Nixon, the sum of two thousand dollars in cash in full of my estate. I also give to Cornelia Nixon, the widow of Thomas Nixon, the plantation whereon she now lives, containing about 275 acres, during her life or widowhood, but in case she marries or dies, the property to go to her surviving children."

Of the children of Thomas Nixon and Cornelia, his wife, viz.: Francis, Jr., Joseph T., Henry B., James W., Mary L., Harriet, and Thomas, all survived the life tenant, except Joseph T. Nixon, who, intestate and without issue, predeceased the testator on 13 January, 1885, aged 26 years, and Francis Nixon, Jr., who, intestate, predeceased the life tenant on 30 March, 1896, aged 49 years, leaving him surviving as his heirs at law the plaintiffs, aged respectively 6 and 5 years, another daughter, Kate, aged 4 years, who died intestate and without issue, on 8 August, 1913, and a posthumous child, who died intestate and without issue on 22 January, 1905. Francis Nixon, Jr., was also survived by his widow, Susan Nixon, whom he married on 6 November, 1888, and who is now living. Cornelia Nixon, the life tenant, never remarried, and died on 20 March, 1899, aged 69 years. It will be noted that, in the facts agreed, the defendants, having ascertained they could not sustain it, abandoned their plea of the statute of limitations.

The plaintiffs contend that their father, Francis Nixon, Jr., deceased, acquired under the last will and testament of the said Francis Nixon, Sr., deceased, a one-sixth undivided interest in and to the said premises described and referred to herein; or that the plaintiffs, together with their deceased sisters, whose heirs at law they are, acquired such interest under said will, and that by reason thereof they are now, together with

that certain undivided interest, which admittedly they own by inheritance through James W. Nixon, the owners, and entitled to the possession of a one-fifth undivided interest in and to the said lands.

The defendants, on the other hand, contend that neither the plaintiffs nor their father, Francis Nixon, Jr., acquired any interest in said land under the said last will and testament of said Francis Nixon, Sr., deceased, and that the plaintiffs are the owners only of that certain undivided interest acquired by inheritance from James W. Nixon.

It was agreed that if upon the facts the court was of the opinion that, under the terms of said will and testament, the plaintiff's father, Francis Nixon, Jr., or the plaintiffs, together with their deceased sisters, acquired a one-sixth undivided interest in and to said lands, then the court shall adjudge that the plaintiffs are now the owners of the one-fifth undivided interest therein; if the court be of the opinion that neither plaintiffs' father, Francis Nixon, Jr., nor the plaintiffs, and their deceased sisters, acquired such one-sixth interest under and by virtue of the terms of said will and testament, then the court shall adjudge that the plaintiffs are the owners of that certain undivided interest in and to said lands, acquired by inheritance from James W. Nixon alone.

It was adjudged that the plaintiffs took nothing under the will of Francis Nixon, Sr., and that they are the owners of a one-twenty-fifth undivided interest in the lands described in the complaint. The plaintiffs excepted and appealed.

*Ehringhaus & Hall and McMullan & LeRoy for the appellants.*

*Whedbee & Whedbee, Thompson & Wilson, Ward & Grimes, and Stephen C. Bragaw for defendants.*

Adams, J. The fourteenth item of the will contains this devise: "I also give to Cornelia Nixon, the widow of Thomas Nixon, the plantation whereon she now lives, containing about 275 acres, during her life or widowhood, but in case she marries or dies, the property to go to her surviving children." Thomas Nixon died in June, 1886; Cornelia, in March, 1899; and Francis Nixon, Jr., father of the plaintiffs, in March, 1896. The plaintiffs contend that their father, a son of Thomas and Cornelia Nixon, acquired under the will of Francis Nixon, Sr., a one-sixth undivided interest in the devised premises, and that upon his death they succeeded to his interest; the defendants say, on the other hand, and as Francis Nixon, Jr., predeceased the life tenant he acquired no interest in the property, and the plaintiffs none as his heirs at law. The question is whether, under the provisions of the will, "her surviving children" are to be ascertained at the death of the testator or at the death of the life tenant—the rule whereby the period of vesting is to be

determined being a rule of construction and not a principle of substantive law.  *Taylor v. Taylor,* 174 N. C., 537.

A brief review of some of the authorities in which the question has been discussed may serve in pointing to the correct conclusion.  Among the earlier cases is *Cripps v. Wolcott,* 56 Eng. Reports, 613, which was decided in 1819.  In this case it appears that Deborah Saunder devised certain real and personal property in trust to pay to or to permit her husband to enjoy the rents and profits thereof during his natural life, and directed that upon his death a sum of money and other personal property should be equally divided between her two sons and her daughter, and the survivors or survivor of them, share and share alike.  In construing this clause, the *Vice Chancellor* said:  "It would be difficult to reconcile every case upon this subject.  I consider it, however, to be now settled that if a legacy be given to two or more, equally to be divided between them, or to the survivors or survivor of them, and there be no special intent to be found in the will, that the survivorship is to be referred to the period of division.  If there be no previous interest given in the legacy, then the period of division is the death of the testator, and the survivors at his death will take the whole legacy.  This was the case of *Stringer v. Phillips.*  But if a previous life estate be given, then the period of division is the death of the tenant for life, and the survivors at such death will take the whole legacy.  This is the principle of the cited cases of *Russell v. Long, Daniell v. Daniell,* and *Jenour v. Jenour.*  In *Bindon v. Lord Suffolk,* the House of Lords found a special intent in the will that the division should be suspended until the debts were recovered from the crown; and they referred the survivorship to that period.  The two cases of *Roebuck v. Dean* and *Perry v. Woods* (3 Ves., 204), before *Lord Rosslyn,* do not square with the other authorities.  Here, there being no special intent to be found in the will, the terms of survivorship are to be referred to the death of the husband, who took a previous life estate."

It has been said that although this seems to have been at the time a very bold decision, yet the rule of construction therein propounded is so reasonable and convenient for general application that it is not surprising that subsequent judges have been favorably disposed to its adoption. 2 Jarman on Wills (6 ed.), 2229.  Certain decisions made it doubtful whether the rule applied to devises of real estate, but no satisfactory ground was discovered for restricting it to personal property, and the question was finally adjudicated in *Re Gregson's Trusts,* 71 Eng. Reports, 559.  There Gregson devised all his freehold estates to his wife for life, which after her decease was to be "shared share and share alike among the following persons"—whose names were given.  It was decided that a strained construction should not be put on the words in order that the

remainder by early vesting might escape the inconveniences of tenure incident to contingent remainders, and that survivorship should be referred, as in case of personal property, to the death of the tenant for life. 2 Jarman, 2131.

A majority of the American courts seem to have adopted this rule, and our own decisions have favored it as indicating the more reasonable construction. In *Biddle v. Hoyt,* 54 N. C., 160, there was a bequest of personal property to Joseph Brickett and his wife for their joint lives, and to the survivor for life, and upon their death to their children, "to be equally divided between them, or the survivor of them, their heirs and assigns forever." At the death of the testator they had three children, two of whom died in the lifetime of the surviving life tenant: Joseph without issue; Sarah, wife of John Norcott, leaving a child, who died without issue in the lifetime of the grandmother. Martha, the other child, married Gould Hoyt, and was living when the life tenant died. The question was whether the bequeathed property was vested in the three children, so that upon the death of two of them in the lifetime of the mother their interests devolved upon their respective representatives, or whether it was suspended during the life of the surviving life tenant and vested in Martha, the surviving wife of Gould Hoyt. It was held that the surviving child was entitled to the whole interest. In the opinion it is said that the rule established in *Cripps v. Wolcott, supra,* and approved in *Hilliard v. Kearney,* 45 N. C., 221, removed all hesitation in deciding the case in favor of the surviving child. So, in *Vass v. Freeman,* 56 N. C., 221: "But though it is an established rule that where there is a bequest simply to A., and in case of his death, or if he die, then to B., A. will take absolutely upon surviving the testator (*Longfield v. Stoneham,* 2 Strange's Rep., 1261; *Trotter v. Williams,* Pre. in Chan., 78), yet where there is another point of time to which such dying may be referred, as is obviously the case when the bequest is to take effect in possession at a period subsequent to the testator's decease, the words in question are considered as extending to the event of the legatee dying in the interval between the testator's decease and the period of vesting in possession. See *Harvey v. McLaughlin,* 1 Price's Rep., 264; *Home v. Pillans,* 2 Myl. and Keen's Rep., 24. Thus it will be seen that, whether in the case of survivorship or in that of a bequest to one person with a limitation over, where the death of the legatee is spoken of as an uncertain event, it can be so only in reference to some other event, and that the death of the testator must, of necessity, be assumed as the event referred to when no other is mentioned in the will. But even where there is no subsequent time to which the death of the legatee, spoken of as contingent, can be referred, and where the bequest is imme-

diate, special circumstances will induce the Court to construe it to mean the death of the legatee at any time, and not restrict it to the death of the testator."

These cases may be regarded as decisive of the present appeal if the principle they enunciate is applicable under our decisions, as it is in the later English cases, to a devise of real property. That some of our decisions have applied it to real property is not to be doubted. Without pausing to analyze various devises in which the principle is impliedly approved, we may refer to cases in which the point has been directly presented. By reference to the record, it will be seen that the maker of the deed construed in *Bradshaw's case* conveyed the land "to his wife to her sole use and benefit during her natural life, to have and to hold, and at her death to the surviving children" of the grantor and the grantee. The Court said that the term "surviving children" meant children living at the death of the life tenant. *Bradshaw v. Stansberry,* 164 N. C., 356. The appellant suggests that as the appeal in that case was dismissed for failure to print the record and briefs, it is not likely that the question received the consideration usually accorded by a full Court; but the force of this criticism is impaired by the Court's reannouncement of the principle and its subsequent citation and approval of the decision. *Taylor v. Taylor, supra.*

In the *Mercer case* the devise was as follows: "I give and devise to my beloved wife, Rosa M. Mercer, the tract of land on which I now reside, containing five hundred acres, more or less, for her lifetime, and at her death to go to our surviving children or their heirs." *Brogden, J.,* who wrote the opinion, said that the persons entitled to the estate are to be determined as of the death of the life tenant. True, the will was interpreted as creating substitute or alternate remainders, but the opinion approves the principle laid down in the *Bradshaw* and *Taylor* cases in these words: "Indeed, the prevailing rule seems to be that if an estate is given by will to the survivors of a class, to take effect on the death of the testator, the word 'survivors' means those living at the death of the testator; but if a particular estate is given and the remainder is given to the then survivors of a class, the word "survivors" means those surviving at the termination of the particular estate." *Mercer v. Downs,* 191 N. C., 203. See *Fulton v. Waddell, ibid.,* 688.

This statement accords with the general rule that words of survivorship in a will, particularly when used in connection with a general gift, refer to the death of the testator as the time at which the survivorship will be determined, unless it is made to appear that the testator intended to refer it to a time after his death; but when the gift to the survivors is preceded by a particular estate for life or years, words of survivorship, in the absence of anything indicating a contrary intention usually refer

to the termination of the particular estate. 40 Cyc., 1511; *Hilliard v. Kearney, supra; Biddle v. Hoyt, supra.*

The appellants cite *Haughton v. Lane,* 38 N. C., 627, as direct authority in support of their position. It will be noted, .however, that no definite period was fixed at which the devise should take effect; it therefore vested in the daughters, or such of them as were alive at the death of the testator, but not to be enjoyed until the death of their mother. In the case before us, the gift in the second or canceled item was to Cornelia during her life or widowhood, but should she marry, to the surviving children of Thomas Nixon and Cornelia; in the fourteenth item, to Cornelia during her life or widowhood, but in case she marries or dies, to her surviving children—that is, her children who were living at her death.

After giving to the argument and the briefs our careful consideration, we conclude that the judgment of the lower court should be

Affirmed.