The eldest son of Mary Spaight and Colonel Spaight, at the date of the will and at the death of the testator, was William Spaight, who died shortly thereafter, leaving the defendants his heirs at law.
George M. Leach has since died intestate and without issue, leaving two sisters (one of whom is wife of the plaintiff) his heirs at law.
The question submitted to this Court is whether the plaintiffs are entitled to claim any, and, if any, what part, of the lands comprehended in the above devise.
We are, in fact, called upon to say whether the devisor meant that his lands should vest in William Spaight, on the death of George M. Leach without having issue living at his death, or whenever the issue of George M. Leach should fail, however remote that period might be; for if the devisor meant that they should vest on the happening of the first mentioned contingency, the devise to William Spaight is good, as an executory devise, and the plaintiffs are entitled to no part of the lands; if, on the happening of the second, they are entitled to part of them, as some of the co-heirs of George M. Leach, the devise to William Spaight being void, on account of the remoteness of the contingency.
It is really questionable, from the words themselves, on which contingency the devisor intended the lands to vest in William Spaight. But when we consider the one as a lawful intent and may be effectuated, the other an unlawful one and must be frustrated, we have no hesitation in saying that he meant that the lands should vest in William Spaight on the death of George M. Leach without leaving issue living at his death; for where the words are doubtful, we should presume a lawful rather than unlawful intent; and the cases relied on by the plaintiff fortify us in our opinion. For in England, where they have estates tail, these words are construed to mean, when applied to real estate, an indefinite failure of issue, to effectuate the presumed intent of the *Page 126 
devisor; that after the issue of his favorite devise had failed, the next object of his affections should succeed to the estate; and this they (159) were enabled to do by declaring the words created an estate tail in the first devisee with a remainder to the second devise.
But, with regard to personal estates, they could create no estate tail to support the remainder. If they said the testator meant an indefinite failure of issue, they made void the limitation, and the absolute interest vested in the first legatee. To avoid thus defeating the intent of the testator, they declared that he meant the failure of issue at the death of the first legatee. We think this abundant authority for us, in this country, where we have no estate tail, to say that the devisor intended, on the death of G. M. Leach without leaving issue then living, that William Spaight should have the lands. In other words, to give this clause the same construction as if applied to a personal estate; for certainly the reason of giving it a different construction when applied to real from that which it receives when applied to personal estate fails in this country.
We do not believe there is anything in the idea that the words of the will created an estate tail in G. M. Leach which the act of 1784 instantly converted into fee simple; for we think, since that act, a fee tail cannot for a moment exist; that the words which before that act created an estate tail, since create a fee simple; for it is certainly as competent for the Legislature to declare the import of words as it was for the founders of our unwritten or common law, and it is by law, either statute or common, that particular words create particular estates. In the British decisions, where a different construction is given to words as they apply to real or personal estate, an estate tail is given, expressly or by implication, to the first devisee; and where the happening of the contingency is plainly tied up to the death of the first devisee, it has been construed an executory devise, and not a remainder dependent on an estate tail. 7 Term Rep., 589, and Pells v. Brown, Cro. Jac., 590, a leading one on executory devise, fully illustrates the doctrine.
(160) We cite no authorities, because we think we act in conformity to principles which none will dispute. Whatever difficulties exist arise from their application.
We are, therefore, of opinion that the plaintiffs are not entitled to any part of the lands mentioned in the devise.
NOTE. — See Bryan v. Deberry, 3 N.C. 356, and the cases and act of Assembly referred to in the note.
Cited: Miller v. Williams, 19 N.C. 501; Zollicoffer v. Zollicoffer,20 N.C. 577; Ward v. Jones, 40 N.C. 406; Buchanan v. Buchanan, 99 N.C. 311,314; Whitfield v. Garris, 134 N.C. 29. *Page 127