A. S. REES AND WIFE ET AL. v. MRS. CHARLOTTE GRIMES
WILLIAMS.

(Filed 25 March, 1914.)

1. Wills—Interpretation—Intent—Defeasible Estates—Statutes.

The intent of the testator as gathered from the entire will controls its interpretation; and this rule applies to the construction of Revisal, sec. 3138, when it appears that the testator devised certain lands without the words of inheritance, and that his intent, gathered from a separate item of the will, was to create a defeasible estate in the first taker, contingent upon his dying at any time, whether before or after the death of the testator, leaving issue surviving him.

2. Wills — Intent — Contingent Remainders — Die Without Issue—Statutes.

A devise of lands to J., with limitation that if she should die without leaving issue, then over, refers the contingency upon which the estate shall vest to the death of J., and not to that of the testator, since the act of 1827, now Revisal, sec. 1581.

3. Wills—Intent—Contingent Remainders—Die Without Issue.

A testator devised certain of his lands to his daughter J., without words of inheritance, by one item of his will, and by the next item of the will provided that in case J. died leaving issue, then to such issue and their heirs; but should J. die without issue surviving her, then to another daughter and a son of the testator, or their heirs, share and share alike: Held, the two items of the will are not repugnant to each other, the intent of the testator, as gathered from the entire will, being that J. should take an estate in the lands defeasible upon the contingency of her dying at any time without leaving issue surviving her; and that at the death of J. the estate would vest in accordance with the happening of either one or the other contingency specified in the will.

APPEAL by defendant from *Cooke, J.,* at November Term, 1913, of WAKE.

This is a petition to rehear the above entitled case, which was decided at the last term (164 N. C., 128). The facts are stated in the former report of the case, and need not be fully repeated here. The single question is, whether the plaintiffs, as devisees under the will of Mrs. Jennie Lind Lee, can make a good title to

the house and lot at the corner of East and Jones streets in the city of Raleigh, under their contract with the defendant, Mrs. Charlotte Grimes Williams. We held before that they could not do so, and we are now asked to reverse that ruling. The decision of the question turns upon the construction of Mrs. Lee's will, the following items thereof being pertinent to the inquiry:

"1. My house and lot situated on corner of East and Jones streets in Raleigh, N. C., I leave to my daughter Jennie Lee, also $1,000 worth of stock at present invested in the Gibson Manufacturing Company of Concord, N. C.

"2. In case my daughter Jennie Lee shall die leaving issue surviving her, then to such issue and their heirs forever; but if my said daughter Jennie Lee shall die without issue surviving her, then I desire said property to return to my eldest daughter, May Lee Schlesinger, and to my son, Harry Lee, to be equally divided between them, or to their heirs, share and share alike.

"3. I bequeath my stock in the Commercial and Farmers Bank in Raleigh, N. C., to be equally divided between my daughter May Lee Schlesinger and my son, Harry Lee.

"4. I also bequeath the sum of $25, and this sum to be taken from the interest of said properties and to be paid over by my executor as he thinks best to a colored man called John, who waited on my husband during his last illness.

"5. I appoint Mr. Henry E. Litchford as my executor of this will, and with the power to change the investments if he thinks best for the interest of my children; also appoint Mr. Henry E. Litchford guardian of my daughter Jennie Lee:

"6. My son, Harry Lee, is not to have control of his stock, only to spend the interest on it, until he is 35 years old, and then said stock is to be turned over to him, if he so desires it."

The will was dated 30 June, 1905, and was probated 13 April, 1906. Jennie Lee, who has since intermarried with A. S. Rees, Mrs. Schlesinger and her husband, and Harry Lee are the plaintiffs. All the devisees are married. Mrs. Lee has had no children. It does not appear that there were any to the other marriages, nor does it appear when the testatrix died, except by inference, between 30 June, 1905, and 13 April, 1906. Plain-

tiffs have duly tendered a good and sufficient deed for the premises, with proper covenants, and filed it with the clerk of the court, to be delivered upon payment of the price agreed upon, towit, $7,500. The court below held that plaintiffs' deed will convey a good title, and entered judgment accordingly. Defendant appealed. We reversed the judgment here.

*Winston & Biggs for plaintiff.*
*Ernest Haywood for defendant.*

WALKER, J., after stating the case: The question is, whether Mrs. Jennie Lee Rees, formerly Jennie Lee, took a fee simple absolute at her mother's death, under the latter's will. The contention of the plaintiff is that at the death of the testatrix, Mrs. Rees, as she survived her mother, acquired an absolute estate in fee under the will, as the contingency expressed in the limitation referred to her death, with or without issue, during the testatrix's lifetime; and this is based upon the ground that the will gives her a fee, but if either of the contingencies, that is, "dying with or dying without issue," should occur, she would be deprived of that estate, and a repugnancy in the terms of the will would arise, the first estate being a fee and the contingencies upon which it is limited cutting it down to a life estate. But this argument, if otherwise it should be allowed to prevail, is predicated upon the false assumption that the testatrix has given an estate in fee in terms which clearly show an intention to do so. It may be conceded, as contended by learned counsel, that taking the two clauses together, by which the estate is limited over upon the contingencies stated, that is, dying with issue then living or dying without such issue, and reading them in the alternative, as we have done, they exhaust every possible contingency and involve the certainty that Mrs. Rees will have only an estate for her life; but we cannot agree to the deduction therefrom that, in this case, it produces such a repugnancy as requires us to consider the event of her dying as one to take place in the lifetime of the testatrix, so that, at her death, Mrs. Rees, surviving, took an estate in fee absolute. There are authorities, we

admit, and perhaps many of them, to the effect that where an estate is given to one in fee, by express terms or clear implication, with a limitation over to others if the first taker should die with or without issue, the death mentioned is one which must take place in the lifetime of the testator in order to avoid a repugnancy between the two limitations, as otherwise the first taker would get only a life estate, instead of the fee so limited to him. But this doctrine, where it has been applied, is, we are told, restricted to cases where a clear intention is manifest to make an absolute gift to the first taker. *Lumpkin v. Lumpkin,* 25 L. R. A., at p. 1104; *Cooper v. Cooper,* 1 Kay and J., 658; *Gosling v. Townshend,* 2 Week. Rep., 23. When the testatrix gave the estate to Mrs. Rees, she did not add words of inheritance, and but for our statute, Pell's Revisal, sec. 3138, the gift would import only a life estate. That section provides: "When real estate shall be devised to any person, the same shall be held and construed to be a devise in fee simple, unless such devise shall, in plain and express words, show, or it shall be plainly intended by the will, or some part thereof, that the testator intended to convey an estate of less dignity." Applying these words to the will, we conclude it plainly appears that Mrs. Lee did not intend to give Mrs. Rees an estate in fee, to become absolute in her daughter at the mother's death, if she were then living, but only such an estate as she would get if, at any time, she should die with or without issue, which, of course, would be substantially a life estate. We must construe the will as an entirety. It was said in *Price v. Johnson,* 90 N. C., 592, while deciding a similar question: "The first and most important rule in the interpretation of wills, to which all other rules must yield, is that the intention of the testator expressed in his will shall prevail, provided it be not inconsistent with the rules of law. 1 Blk. Rep., 627. A will is defined to be the 'legal declaration of a man's intentions which he wills to be performed after his death.' 2 Blk. Com., 499. These intentions are to be collected from his words, and ought to be carried into effect, if they be consistent with law. . . . It is a rule of construction that the whole will is to be considered together, and every part of it

made to have effect, so as to effectuate the intention of the testator; and if there are any apparent inconsistencies in its provisions, it is the duty of the court to reconcile them if possible." It is said that a rule referring the death of the first taker, with or without any issue, to a time during the life of the testator, is extremely technical in its character. "It does not apply where there are indications, however slight, that the testator intended a death without issue occurring subsequent to his death. The rule which construes death without issue to mean death without issue prior to that of the testator is not favored by the courts. . . . In such a case, particularly where at the date of the execution of the will any of the primary devisees are unmarried, it may be fairly presumed that the testator had in contemplation a future marriage and birth of issue, and that, intending to keep the property in his family, he meant a death without issue to take place after his death. If, therefore, the primary devisees survive him, they take an estate in fee which is defeasible by their subsequent death without issue." 1 Underhill on Wills, sec. 348.

We are assuming, for the sake of discussion, that the rule upon which plaintiffs rely has heretofore been adopted by us, and if so, we must yet look at the entire will and there find the true intention of the testatrix. Looking at this will as a whole, and giving effect to all of its parts, we discern clearly an intention of the testatrix not to give to her daughter Jennie Lee an estate in fee simple absolute. If the statute, Revisal, sec. 3138, presumes that she intended such a fee, the presumption is rebutted by subsequent clauses of the will. There is no rule which requires us to reject the later for the earlier clauses of a will. The rule is the other way when they are conflicting. Underhill on Wills, sec. 357. But we must reconcile them, if it can be done, as the testator is presumed to have intended both to take effect. *Ibid.,* sec. 359. We cannot reject either lightly, or without good reason. Underhill, sec. 359, expresses it well, when he says: "Every possible effort should be made by the court to reconcile the clauses seemingly repugnant, and to give effect to the whole will; for the presumption is that the testator meant

REES v. WILLIAMS.

something by every sentence and word in his will, and no court is justified in rejecting any portion of it until it is positively assured that the portion which it rejects cannot be reconciled with the general intention of the testator as expressed in some other portions of the will. And even where the general rule of repugnancy is applied of necessity, and the latter of the two inconsistent clauses is permitted to prevail over the former, it is a settled rule that the earlier of the two clauses will not be disturbed or rejected any further than is absolutely necessary to carry out the presumed intention of the testator as shown in the latter clause." Rejection, therefore, is the last resort, and it must be imperative; and why should we reject, in this case, the last in favor of the first at all, and especially when they can be joined together in perfect harmony? It must be remembered that the testatrix has not given a fee to Jennie Lee *expressly,* and it is more than likely that she did not intend to do so; but it is very certain she intended that, if she, Jennie, died with issue, the property should go to her children, and if without children, then to her brother and sister, her purpose being, in any event, to keep the property in her immediate family, or in the line of her own blood, as long as she could do so by restrictive conditions, and not merely to prevent a lapse. If the estate is released at her death from the contingency, and is made absolute, this clear intention is frustrated. In order to sustain such a construction, we must interpolate words by adding to those in the will, that is, "dying with or without issue," the following, "in my lifetime," instead of adopting the natural meaning, which her own language conveys and which does not so limit the devise. Where the rule upon which plaintiff relies has been adopted, it is said to maintain its hold somewhat weakly, and with a doubtful grasp, and yields easily to any fact or circumstance indicating a different intention. The tendency in this regard is to lay hold of slight circumstances in a will to vary the construction and to give effect to the language according to its natural import. *Matter of Cramer,* 170 N. Y., at p. 276.

Such a technical rule of construction, if it really exists with us, should not be permitted to overrule the clear intention of the

devisor. There is a significant fact in the case, which shows that the testator did not expect her daughter Jennie Lee, now Mrs. Rees, to die in her lifetime, but, on the contrary, she anticipated that she would survive her, and made provision in her will accordingly, by appointing Henry E. Litchford as her guardian, and by clothing him with the power, as her executor, to change the investments, if thought by him to be best for the interests of his children, which, of course, included Mrs. Rees. These facts show that the testatrix contemplated that her daughter Jennie Lee would outlive her, and her dying with or without issue consequently should not be referred to a time preceding the testatrix's death. Circumstances like these were given this effect in *King v. King,* 215 Ill., 100.

There are cases decided in this Court which seem to sustain the plaintiffs' view that the first taker will get a fee absolute at the death of the testator, if he survives so long, but they are cases where the wills were executed prior to 1827 or are founded upon the principle stated in *Hilliard v. Kearney,* 45 N. C., 221, as to survivorship between tenants in common. More recent decisions are to the effect that in such limitations the term "dying with or without issue" refers to a death at any time, whether before or after the testator's death, and they are based, at least principally, upon the change in the law which was made by the act of 1827 (Revisal, sec. 1581), which requires limitations of this kind to be so interpreted as to take effect *when* the first taker shall die, not having issue living *at the time of his death,* and this, of course, without reference to the time when such death may occur. The clear and exact meaning of this statute, and its direct application to a state of facts such as we have here, was decisively set at rest by the case of *Buchanan v. Buchanan,* 99 N. C., 308, where *Chief Justice Smith,* after critically reviewing former decisions, especially *Hilliard v. Kearney, supra,* concludes with these words, which effectually dispose of plaintiffs' present contention: "The true principle, which runs through all the cases, is to ascertain the intent of the testator, gathered from the will itself and all its provisions, and to give the instrument an interpretation which will effectuate that

intent. The testator, in the will before us, limits the property to one son, upon the death of the other without issue, and with no other qualifying restrictions. How, then, by construction, can such a restriction as requires the death to occur before the death of the testator be introduced into the clause and it be made to speak what the testator has not said? Does not the testator intend that Andrew shall have all if Richmond dies, and whenever he dies, with no child to succeed him? Why should his estate become absolute if he dies just before, and be defeasible if he dies just after, the testator's death, and in each case childless? Annex the explanatory words of the statute (and the will construed in *Hilliard v. Kearney* was made in 1775, long before the enactment), so that it will read, Should Richmond die without a bodily heir, 'not having such heir living at the time of his death'—can there be any serious doubt as to the meaning of the clause, and especially when the act declares that the ulterior limitation shall then take effect? If it ties up the contingency to the death, as an independent fact, so as to avoid too remote a limitation under former rulings, why should it not equally exclude an interpretation which refers to an earlier period for the vesting? Without disturbing the ruling in *Hilliard v. Kearney,* the cogent reasons for which are presented in the able opinion as applicable to a tenancy in common, we are of opinion that the limitation over is valid." That case has many times been approved and followed by this Court. *Harrell v. Hagan,* 147 N. C., 113; *Dawson v. Ennett,* 151 N. C., 543; *Perrett v. Bird,* 152 N. C., 220; *Elkins v. Seigler,* 154 N. C., 374; *Smith v. Lumber Co.,* 155 N. C., 389. To the same effect are cases in other jurisdictions having a similar statutory provision. *Smith v. Piper,* 231 Pa., 378; *Weybright v. Powell,* 86 Md., 573; *Harvey v. Bell,* 118 Ky., 512; *Stone v. Franklin,* 89 Ga., 195; *Condict v. King,* 13 N. J. Eq. (2 Beas.), 375. There are also cases of earlier date in this Court, which state and apply the same doctrine. *Jones v. Spaight,* 4 N. C., 157; *Garland v. Watt,* 26 N. C., 287; *Ward v. Jones,* 40 N. C., 400; *Smith v. Brisson,* 90 N. C., 284; *Galloway v. Carter,* 100 N. C., 112; *Williams v. Lewis,* 100 N. C., 142; *Trixler v. Holler,* 107

REES *v.* WILLIAMS.

N. C., 617; *Kornegay v. Morris,* 122 N. C., 199 (*s. c.,* on rehearing, 124 N. C., 425); *Sain v. Baker,* 128 N. C., 256; *May v. Lewis,* 132 N. C., 115. There can be no sound distinction, under these decisions, between a limitation over in one event, or upon the happening of a single contingency, and one where there is a gift over in two or more events, one of which must occur and reduce the devisee's estate to one for. life. If it is once clear that the devisee is to take an absolute interest, a gift over in one event is just as inconsistent with that absolute interest as a gift in several, one of which must take place. In either case, the absolute interest in fee may be defeated and cut down to a life estate. This is clear. Our case is very much like that of *Jones v. Spaight, supra,* where the words of the devise are substantially the same. It was there held that the limitation over was good as an executory devise, under the act of 1784, ch. 204 (Revisal, sec. 1578), by which a fee tail is converted into a fee simple, and without the aid of the act of 1827, as it had not then been passed. The words of the limitation themselves, in that case, as in this, made the failure of issue definite by confining it to those living at the death of the first taker.

Plaintiffs rely upon *Hilliard v. Kearney, supra; Baird v. Winstead,* 123 N. C., 181, and *Whitfield v. Garris,* 134 N. C., 31, but none of those cases sustains their position.

We have already referred to the special doctrine which controlled the decision in *Hilliard v. Kearney,* and which is not applicable here. The other cases are far from deciding that the first estate became a fee simple absolute at the death of the testator, but, on the contrary, held, in harmony with the cases we have just cited, that the dying without issue was not confined to the lifetime of the testator, so as to make the estate absolute and indefeasible at his death, if the contingency had not then happened, but that it extended beyond his lifetime and meant a dying at any time, and that, as the devisee died leaving children, the ulterior limitation was defeated, though it would have been otherwise if the contingency had not happened, as then the land would have gone to the ulterior devisees. In the *Whitfield case* we held, citing some of the cases *supra,* that the children

165—14

took no estate by implication or construction of law, but that their father acquired by the gift a conditional fee, which was defeasible upon his dying without children, but as he left children, his estate was converted thereby into a fee simple absolute, the ulterior estate being defeated by the terms of the devise, and his children, therefore, took from him only by descent, and their inheritance was in its turn defeated by his deed to others for the property. This decision necessarily extended the contingency to a period subsequent to the testator's death. The gist of that decision will be found in this extract from Underhill on Wills, sec. 468, upon which reliance was there placed by the Court: "Where real or personal property is given to a person absolutely, but if he should die without leaving children, then over, the primary devisee takes a common-law fee conditional, which is defeasible on his death without leaving children, though the children, if he leave any, take no estate as purchasers under the will, by implication. If the first taker shall die, leaving children surviving, by which event the remainder is defeated, they will take by descent from their parent, and not as purchasers under the will. He has an estate in fee, with full power of disposal, and the only effect of mentioning the children in the will is to indicate the contingency upon which his estate in fee is to be defeated."

A careful examination of the case has convinced us that our former decision was correct. Our conclusion is that Mrs. Lee did not intend to devise an absolute estate in fee at her death to her daughter Jennie Lee, but a defeasible one, even if by the contingencies it be reduced practically to a life estate, and further, she intended that, at the death of Jennie Lee, now Mrs. Rees, whenever it occurred, the gift over should take effect, according as the one or the other event had taken place, upon which it was made to depend. Mrs. Rees, therefore, cannot convey to the defendant a good and indefeasible title to the land, as she has contracted to do.

All the persons who may take under the will are not parties to the record, as it cannot be determined who they will be until the death of Mrs. Rees, for if she has children who survive her,

they will take in preference to Mrs. Schlesinger and Harry Lee, who can only take in their turn, if there are no such children of Mrs. Rees. As to her, the law does not consider the possibility of issue as now extinct.

Petition dismissed.