Ruffin, Chief Justice.
 

 We have bad no hesitation in adopting the construction of the deed in favour of the plaintiff.
 

 By the act of 1823, 1 Rev. Stat. ch. 37, sec.- 22, a limita
 
 *185
 
 tion by deed of slaves to one in remainder, after a reservation to the donor for his life, is unquestionably good; because, had it been a bequest for life from another person to this donor, and then over, it would, in 1823, have been effectual. But it is said, that in the present case it is different, inasmuch as this is a limitation, not merely after a life estate in the donor, but “ after the death of the donor, having no heirs;” because, at the making of the act, a gift over by will was void, which was limited to take effect upon the death of a first taker “without heirs,” or “ having no heirs”; and this deed is not helped by the act of 1827", 1 Rev. Stat. ch. 43, sec. 3, for the reason, that the act of 1823 only makes good such limitations by deed, as were then good by way of executory devise.
 

 We see no reason for thus restricting the operation of the act of 1823. It is a remedial and beneficial act, relating to limitations of a species of property, in which consists a large portion of the substance out of which our citizens make family provisions and settlements. It ought, therefore, to be construed with a liberality which will admit all those modifications of interest in the property, which the heads of families usually desire, and the interests of the whole family may require, as far as the words will allow the Court to go. The general purpose of the Legislature may be plainly seen. It was, to authorise whatever might be done by will, to be done also by deed. Why should it be supposed that the Legislature meant such things only as might, at that time, be done by will? If, afterwards, it was thought proper to render, by statute, a limitation by will good, which then was not good, for the same reason, while the act of 1823 is left in the' statute book, it would seem that the Legislature must wish, and have designed,- that a like limitation in a deed should operate effectually. There could be no motive for tying down the' law of 1823 to the very moment of its enactment. On the' contrary, the sound construction of the act seems to be, that only one thing is requisite to bring a case within it — and that is, that the deed should be “ thereafter made.” If it be, and’ at the time of the making of the deed, its provisions, if contained in a will, would in law be good, so shall they be in*
 
 *186
 
 the deed. Neither the object nor the language of the Legislature can be otherwise satisfied.
 

 Then, applying the act of 1827 to this question, it puts it beyond doubt. The act does not, indeed, use these very words, “ having no heirs”; yet they are equivalent to those found in it, which are mentioned but as examples of a class of phrases then in the minds of the law-makers. As the means of ascertaining the event on which a slave is to go over, and the period within which that event must occur, if it occur at all, the effect of the act is to make the popular acceptation of all such expressions as those enumerated in it, their legal signification in future, instead of that which had previously prevailed: so as to give the thing to the first taker absolutely, if he leave a child surviving him; or, if the first taker leave no such surviving child, to give the thing then to the remainder man absolutely.
 

 But without such a construction of the act, and supposing that of 1823 not to have within its purview devises rendered valid by subsequent enactments; yet we think the provisions of the deed before us might be supported, independent of the act of 1827, upon a principle of the common law. This disposition is by one not having a child at the time, and to take effect in default of heirs — not of a devisee or of any third person, but of the donor himself — it is plain from the fact, that the donee is stated in the deed to be the niece of the donor, that the term “ heirs” here means children, or issue, or heirs of the body. It is perfectly clear, when
 
 the
 
 limitation in a will is upon the failure of
 
 the testator'1 s own issue,
 
 that the intention must merely
 
 be to
 
 create a contingency, on which the legacy will take effect
 
 at the death of the testator,
 
 if there then be no issue. A testator means, in such a case, to say, this is my will on condition, or provided I leave no child of my own; but if I leave a child, then of course I shall not wish to give my property away from him, and this shall not be my will.” The cases upon this subject, from that of
 
 French
 
 v.
 
 Caddell,
 
 3 Bro. P. C. 257, down to that of
 
 Sanford
 
 v.
 
 Irby,
 
 3 Barn. & Ald. 654, are collected in 2 Pow. Dev. 567, Mr. Jarmin’s edition; find they clearly establish the rule here laid down.
 

 
 *187
 
 Upon the other points stated in the record, the counsel for the defendant properly, as we think, yielded the case: and upon the whole, therefore, the judgment must be affirmed.
 

 Per. Curiam. Judgment affirmed.