FRANCES AMELIA HENDERSON ET AL. v. WESTERN CAROLINA
POWER COMPANY.

(Filed 11 March, 1931.)

1. **Wills E a—A devise will be construed to be in fee simple unless intention is expressed in will to convey estate of less dignity.**

    The common-law rule that a devise without words of perpetuity or limitation conveyed a life estate only unless there is a manifest intention to convey the fee has been changed by C. S., 4162, providing that a devise of real estate shall be construed to be a devise in fee simple unless the will by plain and express words indicates an intention to convey an estate of less dignity.

2. **Wills E b—Devise in this case held to create a defeasible fee.**

    Where a will devises to the children of the testatrix certain lands to be equally divided between them, and by later item provides that if any of the children should die without leaving legitimate issue his or her share should go to the surviving children or grandchildren of the testator, *Held:* the will devises the fee to the children as tenants in common, defeasible upon their dying without legitimate issue them surviving.

3. **Wills E d—The phrase "dying without issue" refers to the death of the first taker of the fee.**

Where a will creates a limitation over in the event that the first taker of the fee should die without issue, the event refers to the death of the first taker of the fee, and upon his death the estate immediately vests absolutely in the contingent remaindermen.

4. **Judgments L b—Decree for partition will not bar action relating to title to lands partitioned.**

A final decree for partition of lands operates to sever the unity of possession but it does not convey title, and where the devisees under a will have been parties to a special proceeding for partition in which a final decree has been rendered, they are not estopped thereby from maintaining an action against the grantee of one of the devisees to recover the land conveyed.

5. **Wills E d—In this case held: upon death of devisee without issue, other children of testator took as purchasers under the will.**

Where a will devises property to the children of the testatrix as tenants in common and by later item provides that in the event of any of the children dying without legitimate issue them surviving the share of such child "shall go to such of my surviving children or grandchildren" as might be selected by the devisee, *Held:* the intent of the testatrix was to give her children and grandchildren the beneficial use of the property, and the devise is unequivocal and the intent is controlling, and the position that the later item does not affect the estate created by the prior item because the later item is not imperative, cannot be maintained.

6. **Wills E h—Held: equity will execute power of appointment under the facts of this case.**

As a rule equity will not aid the nonexecution of a mere power of appointment, but where the power is in the nature of a trust, equity will execute the power, and where the devise is to the children of the testator, and in the event that any one of them should die without issue him surviving, his share should go to the other children or grandchildren of the testatrix as selected by the will of the child dying without issue, and one of the children dies without issue and without exercising the power, *Held:* equity will apportion the property equally to all the members of the class described in the will.

APPEAL by defendant from *Shaw, J.,* at August Term, 1930, of BURKE. Affirmed.

This is an action to recover real property and damages for its wrongful detention. Pleadings were filed, a trial by jury was waived, and upon the facts as admitted by the parties and found by the court, judgment was rendered in favor of the plaintiffs and the defendant excepted and appealed.

Mrs. William Cornelia Henderson died in Burke County on 29 March, 1927, leaving a will, the seventh and ninth items of which are as follows:

"Seventh: All the balance and residue of my estate, real and personal or mixed wherever situated, I give and devise and bequeath to my said children to be equally divided to them, share and share alike."

"Ninth: Should any of my children die, leaving no legitimate issue of his or her own body, then the share of my estate herein devised or bequeathed to such child or children, shall go to such of my surviving children, or grandchildren as the testator may select, for his or her heirs or heir."

After her death Mrs. Henderson's children (L. P. Henderson, Charles C. Henderson, Augustus Henderson, Frances A. Henderson, Zalie B. Henderson, W. C. McDowell, M. R. Michaux and H. G. Edmonson) brought a special proceeding, *ex parte,* before the clerk of the Superior Court of Burke County for the partition of several tracts of the devised land. The proceeding was prosecuted to final judgment and the tract in controversy, containing about 201 acres, was allotted to Charles C. Henderson.

On 24 February, 1923, Charles C. Henderson and his wife executed a deed purporting to convey this land to W. B. Berry, an agent of the defendant; on 28 February, 1923, Berry and his wife executed a deed purporting to pass the title to A. M. Kistler, another agent of the defendant; and on 6 January, 1926, Kistler executed a deed purporting to convey the same land to the defendant, who entered into and has since retained possession of the property.

On 14 November, 1926, Charles C. Henderson died intestate, without issue, and without having exercised the power of appointment conferred upon him by the will of his mother, Mrs. William Cornelia Henderson.

The plaintiffs, who are the surviving children and grandchildren of Mrs. Henderson, instituted this action on 6 August, 1928.

*Brooks, Parker, Smith & Wharton for plaintiffs.*
*W. S. O'B. Robinson, J. M. Mull, S. J. Ervin and S. J. Ervin, Jr., for defendant.*

ADAMS, J. By the earlier common law a general devise of lands without words of perpetuity or limitation conveyed a life estate only, unless there was a manifest intention to give the fee; but in 1784 this rule was abolished by the enactment of a statute which provides that a devise of real estate shall be construed as a devise in fee simple unless by plain and express words it indicates an intent to convey an estate of less dignity. C. S., 4162. Standing alone, the seventh item of Mrs. Henderson's will therefore vested in her children a title in fee as tenants in common. In what respect is this devise modified by the ninth paragraph?

The partition of the land among the tenants was complete; a final decree had been made allotting the tract in controversy to Charles C. Henderson. He acquired his title subject to the provision that if he died leaving no legitimate issue, the share devised to him should go to such of the surviving children or grandchildren of the testatrix as he might select as his heirs. He died intestate, without issue, and without having made any appointment or selection of his successor. We deem it manifest that the seventh and ninth clauses of the will gave him a title in fee to his part of the land, defeasible upon the happening of these contingencies.

A defeasible fee is one which may continue, but is liable to be determined by some act or occurrence limiting its duration or extent. It is called a fee by virtue of the possibility of its continuance; it is said to be defeasible because its duration may depend upon a contingency. *West v. Murphy,* 197 N. C., 488.

The common law regarded a limitation contingent upon death as void for remoteness, and in order to evade the consequences sought some intermediate period to which the words "dying without issue" might be referred. *Yarn Co. v. Dewstoe,* 192 N. C., 121; *Hilliard v. Kearney,* 45 N. C., 221, 231. But in 1827 this rule was changed by the following statute: "Every contingent limitation in any deed or will, made to depend upon the dying of any person without heir or heirs of the body, or without issue or issues of the body, or without children, or offspring, or descendant, or other relative, shall be held and interpreted a limitation to take effect when such person dies not having such heir, or issue, or child, or offspring, or descendant, or other relative (as the case may be) living at the time of his death, or born to him within ten lunar months thereafter, unless the intention of such limitation be otherwise, and expressly and plainly declared in the face of the deed or will creating it: *Provided,* that the rule of construction contained in this section shall not extend to any deed or will made and executed before the fifteenth of January, one thousand eight hundred and twenty-eight."

In considering the significance and effect of this statute we refer to *Patterson v. McCormick,* 177 N. C., 448. There the contested devise was in these words: "After the death of my mother I will and bequeath the plantation above mentioned to my nephews, John D. and Clem Jowers, to be equally divided between them. In case they or either of them die without issue, it is my will that the property herein bequeathed shall go to the heirs of Archibald and Gilbert Patterson and to the surviving brother John D. or Clem Jowers, as the case may be, to be equally divided between them."

The life tenant died in 1877 and John D. Jowers in January, 1904, without surviving issue, and the court held that as the time of dying was to be referred to the death of John D. or Clem Jowers the title to

the plantation vested, upon the death of John D. absolutely in the plaintiffs and in the defendants as purchasers from Clem.

In that case it is said that the rule laid down by the statute is obligatory on the courts and must be observed in all cases except when, as provided by statute, a contrary intent is expressly and plainly declared in the face of the deed or will, and that it is now established that the phrase "dying without heirs or issue," upon which a limitation over is to take effect, is referable to the death of the first taker of the fee without issue living at the time of his death, and not to the death of any other person or to any intermediate period.

This construction of the act has been maintained in *Ex parte Rees,* 180 N. C., 192; *Willis v. Trust Co.,* 183 N. C., 267; *Ziegler v. Love,* 185 N. C., 40; *Vinson v. Gardner, ibid.,* 193; *Alexander v. Fleming,* 190 N. C., 815; *Yarn Co. v. Dewstoe, supra.*

The defendant contends that the testatrix gave to Charles C. Henderson an unconditional fee for two reasons: (1) Under the provisions of section 607 of the Consolidated Statutes and of the decree in the proceeding for partition all who were parties to that proceeding are estopped "in the same way and to the same extent as though they had executed a deed to Charles C. Henderson with full covenants of warranty"; (2) the ninth section of the will in no way enlarges, reduces, or diminishes the estate conferred by section seven, for the reason that the language purporting to create a limitation in default of "legitimate issue of his body" is not imperative.

With respect to the first contention we may say that section 607 is in Article 23 of the Code of Civil Procedure entitled "Judgment." It makes no specific reference to the partition of real property, which is effected by a special proceeding. It applies to any action wherein the court declares a party entitled to the possession of property and orders a conveyance of the legal title. In that event the statute authorizes the court in its discretion to declare in the order that the effect shall be to transfer the legal title. The clerk's decree or judgment in the special proceeding operates as a deed of conveyance "in as ample and valid manner and form as though the petitioners had executed deeds to each other for the respective lots assigned them." Certainly, if the tenants had executed deeds to one another they could have conveyed no greater interest than they acquired under the will; and according to their verified petition, they proceeded before the clerk in order that they might "hold their shares in severalty and under definite metes and bounds." The partition severed the unity of possession but conveyed no title. *Harrington v. Rawls,* 131 N. C., 39. There was no covenant of warranty to work an estoppel.

Nor do we concur in the defendant's second proposition. The evident intent of the testatrix was to give her children and grandchildren

the beneficial use of her property, and to this end she directed that if any of her children died leaving no legitimate issue, the title conferred by the seventh clause of the will should go to other members of her family. To this extent the devise is unequivocal and the intent is controlling: in the event of the specific contingency "the share of my estate herein devised *shall* go to such of my surviving children and grandchildren, as the testator (Charles C. Henderson) may select for *his* heirs or heir." *Ellington v. Trust Co.,* 196 N. C., 755; *Brown v. Brown,* 195 N. C., 315; *Williams v. Best, ibid.,* 324.

Charles C. Henderson did not make any selection or appointment. What is the effect of his failure or refusal to do so?

As a rule equity will not aid the nonexecution of a mere power. In *Chewning v. Mason,* 158 N. C., 578, the testator devised land to his wife "during her natural life, and then to dispose of it as she sees proper." The Court held that the devised estate was property and the power of disposal a mere authority which she could exercise or not in her discretion. If she had exercised the power the fee would have gone to her grantee directly from the testator, she being the mere instrument by which the estate would have been conveyed. A use created under a power takes effect as if the use instead of the power had been inserted in the instrument containing the power. *Levy v. Griffis,* 65 N. C., 236. In the *Chewning case* the donee did not designate any class or individual as the successor of her title upon the occurrence of a contingency. In such cases equity will not ordinarily interfere. *Harrison v. Battle,* 21 N. C., 213; *Bond v. Moore,* 90 N. C., 239. "But in laying down this broad rule, we must be careful to distinguish between mere powers and powers in the nature of trusts. The distinction between a power and a trust is marked and obvious. 'Powers (as *Lord C. J. Wilmot* had said) 'are never imperative'; they leave the act to be done at the will of the party to whom they are given. Trusts are always imperative, and are obligatory upon the conscience of the party intrusted.' But sometimes trusts and powers are blended; a man may be invested with a trust to be effected by the execution of a power given to him, which is in that case imperative; and if he refuse to execute it, or die without having executed it, equity, on the general rule that the trust is the land, will carry the trusts into execution at the expense of the remainderman, and without any regard to the person in whose favor it is to be executed, being a mere volunteer, and not a purchaser, creditor, wife, or child." . . . "The question, whether a power is simply such, or a power in the nature of a trust, commonly arises on a power to appoint to a man's children or relations. In *Brown v. Higgs, Lord Eldon* stated the principle of all the cases on this subject to be, that if the power is a power which it is the duty of the party to execute, made his duty by the requisition of the will, put upon him as such by the testator, who had given

him an interest intensive enough to enable him to discharge it, he is a trustee for the exercise of the power, and not as having a discretion whether he will exercise it or not; and the Court adopts the principle as to trusts, and will not permit his negligence, accident, or other circumstances to disappoint the interests of those for whose benefit he is called upon to execute it. Thus in *Harding v. Glyn,* Harding devised certain articles to his wife, 'but did desire her, at or before death, to give the same unto and amongst such of his own relations as she should think most deserving and approve of.' The Master of the Rolls held this to be a trust for the relations in default of appointment. He said that it operated as a trust in the wife, by way of power, of naming and apportioning, and her nonperformance of the power should not make the devise void, but the power should devolve on the Court." 2 Sugden on Powers, 159, 160.

Pomeroy states the principle as follows: "Where the power is in trust, A. may have some discretion with respect to the mode in which he shall exercise it, with respect to the amounts distributed among a designated class of beneficiaries, and the like; but he has no discretion as to whether he will or will not exercise it at all. It partakes so much of the nature of a trust, that an obligation rests upon him, and an equitable right is held by the beneficiaries—a right which equity recognizes, and to a certain extent protects; so that if A. does not discharge the duty resting upon him, a court of equity will, to a certain extent, discharge the duty in his stead. A trust power may therefore be defined as follows: It is an authority given to A. to dispose of property of which the legal title is held by B., to or among a specified beneficiary or class of beneficiaries, conferred in such terms that a fiduciary or trust obligation rests upon A. to make the disposition, although he may be clothed with some discretion as to the amounts or shares which he shall confer upon the individuals constituting a class of beneficiaries, or even as to the persons whom he shall select from the class to receive the entire benefit. On the other hand, the beneficiaries may be so specified that no discretion with respect to them exists. When the trust power is of such a nature that the donee-trustee is authorized to dispose of the property among a class, and is clothed with a discretion, a court of equity will not interfere to control that discretion, or interfere with the mode of exercising it, if he does in fact make an appointment. If, however, the donee-trustee fails to act at all, and makes no appointment, it is a settled rule that a court of equity, in enforcing the power on behalf of the beneficiaries, will always decree an equal distribution of the property among all the persons constituting the class." 3 Pomeroy's Equity Jurisprudence (4 ed.), sec. 1002.

And Story says: "It is upon the same ground that if a power of appointment is given by will to a party to distribute property among cer-

tain classes of persons, as among relations of the testator, the power is treated as a trust; and if the party dies without executing it, a Court of Equity will distribute the property among the next of kin." Story's Equity Jurisprudence (14 ed.), sec. 1427. See, also, English and American Notes, 21 English Ruling Cases, 412; *Welmore v. Henry,* 102 N. E. (Ill.), 189; *Cruse v. McKee,* 73 A.D. (Tenn.), 186; *Little v. Bennett,* 58 N. C., 157. In *Bond v. Moore, supra,* it is said that a testamentary direction to convey real property, in the absence of restrictive or qualifying words, when applied to instructions given a trustee, is a direction to convey the full estate vested in him, and the trust consists in the right to have it performed.

A survey of the authorities leads us to this conclusion: Mrs. Henderson's will contains a clear indication of an intention that the share of Charles C. Henderson in the real property devised by the seventh item should go to the children or grandchildren described in item nine if he died "leaving no legitimate issue of his body"; that the testatrix gave him a defeasible estate in fee simple; that the power of appointment conferred upon him was in the nature of an executory trust, *Levy v. Griffis, supra;* that his title was defeated by the happening of the prescribed contingency; and that as he never executed his power of appointment and the testatrix made no limitation over in default of appointment, equity will apportion the subject-matter equally among all the members of the class or classes described in the ninth item of the will.

It may be noted that *Harrison v. Battle, supra, Levy v. Griffis, supra, Bond v. Moore, supra, Taylor v. Eatman,* 92 N. C., 602, and *Hicks v. Ward,* 107 N. C., 392, differ materially from the case under consideration in that they relate to wills or conveyances in which the donee was not directed to execute the power in behalf of any designated class.

Judgment affirmed.