NYMPHUS GREEN HOUSE v. JOSEPH THOMAS HOUSE AND WIFE, LUCILLE BAILEY HOUSE; JAMES ALLEN HOUSE AND WIFE, VIRGINIA MOORE HOUSE; JOSEPHINE HOUSE, UNMARRIED; DOROTHY HOUSE WILLIAMS AND HUSBAND, H. BAGLEY WILLIAMS; WILLIE HOUSE PERRY AND HUSBAND, WILLARD E. PERRY; RUTH HARE HOUSE, WIDOW; ALLINE HOUSE MEYERS AND HUSBAND, CHARLES A. MEYERS; EDITH HOUSE KING AND HUSBAND, NEVINS F. KING; HARPER HILLMAN HOUSE, JR., UNMARRIED; TALMAGE WESLEY HOUSE, A MINOR; HOWARD MARSHALL HOUSE, A MINOR; REBECCA HOUSE, A MINOR; MANUELLA HOUSE, A MINOR; AND MARJORIE RUTH HOUSE, A MINOR.

(Filed 14 December, 1949.)

1. **Wills § 31—**

A will must be construed to ascertain and effectuate the intent of testator unless contrary to some rule of law or at variance with public policy, and to this end it is permissible for the courts to transpose words, phrases or clauses.

2. **Wills § 33c—**

The courts favor the early vesting of estates.

3. **Same—Will held to devise fee defeasible upon death of daughter without issue her surviving.**

Testator devised a life estate to his wife with provision that at her death his lands should be divided among his living children, with particular description as to the share each should take, with further provision that one daughter (who had living children at the time the will was executed) should take a life estate in her share with remainder to her children, and that his other named daughters and three named sons should have their share in fee simple forever "And if either one of my daughters shall die without issue, their share of the lands shall be equally divided among" the three named sons. *Held:* The words "shall die without issue" refer to the death of the devisees of the fee and not to the death of the life tenant, and the daughters took a defeasible fee so that upon the death of one of them without issue her surviving, her share became vested in the three named sons.

BARNHILL, J., dissenting.

APPEAL by interveners from *Hamilton, Emergency Judge,* from judgment signed out of term by consent, 30 June, 1949. From WAKE.

This is an action begun as a special proceeding before the Clerk of the Superior Court of Wake County, for the sale of lands for partition.

Mrs. Dorcas Sealey and husband, Wade Sealey, Mrs. Estelle Richards and husband, D. E. Richards, Mrs. Otelia Ferrell and husband, W. R. Ferrell, and Mrs. Metta Straughn, were allowed to intervene and file pleadings.

The interveners allege that the devise of lands to Martha Virginia Paschal, under the will of Thomas Wesley House, was a devise in fee

simple and that upon her death, the title to the lands vested in her heirs at law and next of kin.

Thomas Wesley House died leaving a last will and testament, which was duly probated in Wake County. He devised all his lands to his wife Louisa Jane House, for life; then to his children in the manner set forth in Item Five of his will, which reads as follows:

"ITEM FIVE:—At the death of my wife, the land hereinafter described of which I may die seized and possessed, shall be divided among my living children, and if one of them is dead, leaving children then these children shall have the share of their parent. My daughters, to-wit: Dorcas Anne Ceily, wife of Wade Ceily, Martha Virginia Paschal, wife of Edward Paschal, Otelia Sunshine Ferrell, wife of Walter Ferrell, at the death of their mother shall have their shares of the land herein bounded and described in fee simple forever. My sons, to-wit: Nimfus Green, Ezra Lyman and Harper Hillman shall each have their share of the land in fee simple forever. And if either one of my daughters shall die without issue, their share of the land shall be equally divided among these three of my sons (sic).

"My daughter, Meta Mason Straughan, wife of Elias Straughan, shall have use of the land hereinafter given to her, and all the rents and profits arising therefrom, so long as she may live, and at her death, the same shall be equally divided among her children and held by them in fee simple forever."

Item Seven of the will describes by metes and bounds the lands devised to each of the devisees; a tract of 41⅓ acres having been devised to Martha Virginia Paschal.

The life tenant is dead, and upon her death the devisees named in Item Five, went into possession of the respective tracts of land designated for them in Item Seven of the will.

Martha Virginia Paschal died intestate and without issue, in June, 1948.

This cause came on for hearing below, and his Honor held that the devise to Martha Virginia Paschal in fee, was not absolute, but defeasible upon her death without issue, and that upon her death without issue, the title to the said 41⅓ acres of land became vested in Nymphus Green House, Ezra Lyman House and Harper Hillman House, as provided in said will.

The interveners excepted to this ruling and appealed, assigning error.

*Douglass & McMillan, Bickett & Banks, and Robert L. McMillan, Jr., for appellee.*

*Brassfield & Maupin for appellants.*

DENNY, J.  The paramount aim in the interpretation of a will is to ascertain, if possible, the intent of the testator, considering the instrument as a whole, and to give effect to such intent, unless contrary to some rule of law or at variance with public policy.  *Williams v. Rand,* 223 N.C. 734, 28 S.E. 2d 247; *Culbreth v. Caison,* 220 N.C. 717, 18 S.E. 2d 136; *Smith v. Mears,* 218 N.C. 193, 10 S.E. 2d 659; *Williamson v. Cox,* 218 N.C. 177, 10 S.E. 2d 662; *Heyer v. Bulluck,* 210 N.C. 321, 186 S.E. 356. And, it is permissible, in order to effectuate or ascertain a testator's intention, for the Court to transpose words, phrases, or clauses.  *Williams v. Rand, supra; Heyer v. Bulluck, supra; Washburn v. Biggerstaff,* 195 N.C. 624, 143 S.E. 210; *Gordon v. Ehringhaus,* 190 N.C. 147, 129 S.E. 187; *Crouse v. Barham,* 174 N.C. 460, 93 S.E. 979; *Baker v. Pender,* 50 N.C. 351.

Also, generally speaking, when a will is sufficiently ambiguous to permit construction, the courts favor the early vesting of estates, and the first taker of an estate by will is ordinarily to be considered as the primary object of the testator's bounty.  *Weil v. Weil,* 212 N.C. 764, 194 S.E. 462; *Westfeldt v. Reynolds,* 191 N.C. 802, 133 S.E. 168; *Goode v. Hearne,* 180 N.C. 475, 105 S.E. 5; *Bank v. Murray,* 175 N.C. 62, 94 S.E. 665; *Whitfield v. Douglas,* 175 N.C. 46, 94 S.E. 667.

The real question, therefore, submitted for our decision on this appeal, is simply this:  Did the testator devise to his daughter, Martha Virginia Paschal, an estate in fee simple, or a defeasible fee?

The appellants contend that it was the intent of the devisor to devise the lands described by metes and bounds in Item Seven of his will, in fee simple to his three daughters, Dorcas Anne Sealey, wife of Wade Sealey, Martha Virginia Paschal, wife of Edward Paschal, and Otelia Sunshine Ferrell, wife of Walter Ferrell, should they survive their mother, the life tenant; and, that it was only in the event of the death of either one or more of the designated daughters without issue, prior to the death of the life tenant, that the testator intended for the share of such deceased daughter to be equally divided among the three sons, citing *Whitley v. McIver,* 220 N.C. 435, 17 S.E. 2d 457.

On the other hand, the appellees contend that the "dying without issue" is referable to the death of the first taker of the fee and not to the death of the life tenant.  G.S. 41-4; *Patterson v. McCormick,* 177 N.C. 448, 99 S.E. 401; *Rees v. Williams,* 165 N.C. 201, 81 S.E. 286; *Perrett v. Bird,* 152 N.C. 220, 67 S.E. 507; *Dawson v. Ennett,* 151 N.C. 543, 66 S.E. 566; *Williams v. Lewis,* 100 N.C. 142, 5 S.E. 435; *Galloway v. Carter,* 100 N.C. 111, 5 S.E. 4; *Buchanan v. Buchanan,* 99 N.C. 308.

This appeal turns largely upon the construction given as to the time the testator intended these words in Item Five of his will, to be applicable:  "And if either one of my daughters shall die without issue, their

share of the land shall be equally divided among these three of my sons."
In the absence of a plainly expressed intention to the contrary, appearing
in the will, the above words must be construed in the light of the Act of
1827, now G.S. 41-4, which reads as follows: "Every contingent limita-
tion in any deed or will, made to depend upon the dying of any person
without heir or heirs of the body, or without issue or issues of the body,
or without children, or offspring, or descendant, or other relative, shall be
held and interpreted a limitation to take effect when such person dies
not having such heir, or issue, or child, or offspring, or descendant, or
other relative (as the case may be) living at the time of his death, or
born to him within ten lunar months thereafter, unless the intention of
such limitation be otherwise, and expressly and plainly declared in the
face of the deed or will creating it: Provided, that the rule of construc-
tion contained in this section shall not extend to any deed or will made
and executed before the fifteenth of January, one thousand eight hundred
and twenty-eight."

Many of our early decisions, decided before the Act of 1827, now G.S.
41-4, as well as later cases construing deeds and wills executed prior to its
enactment, support the contention of the appellants. See *Rice v. Sater-
white,* 21 N.C. 69; *Brown v. Brown,* 25 N.C. 134; *Hilliard v. Kearney,*
45 N.C. 221; *Gibson v. Gibson,* 49 N.C. 425, and other cases cited and
discussed by *Clark, C. J.,* in *Patterson v. McCormick, supra.*

In this latter case the testator devised the property in question to his
mother for life and disposed of the fee in the following language: "After
the death of my mother I will and bequeath the plantation above men-
tioned to my nephews, John D. and Clem Jowers, to be divided equally
between them. In case they or either of them die without issue, it is my
will that the property herein bequeathed shall go to the heirs of Archibald
and Gilbert Patterson and to the surviving brother John D. or Clem
Jowers, as the case may be, to be equally divided between them." The
life tenant died and the nephews went into possession of the property.
Thereafter, John D. died without leaving issue surviving him. Therefore,
the facts raised the identical question of construction that is presented
on this appeal; and the heirs of John D. Jowers took the position that
since he survived the life tenant, he took the property in fee simple; but
the Court held otherwise, and said: "The act of 1827 has been construed
by this Court at least twenty-six times, beginning with *Tillman v. Sin-
clair,* 23 N.C. 183 (decided in 1840), and ending with *Kirkman v. Smith,*
175 N.C. 579, and in every case in which it has come before the Court
for construction it has uniformly been held that 'Dying without heirs or
issue,' upon which a limitation over takes effect, is referable to the death
of the first taker of the fee without issue living at the time of his death,
and not to the death of any other person or to any intermediate period,"

citing the twenty-six cases. See also these additional cases, which are in accord with the above opinion: *Ex parte Rees,* 180 N.C. 192, 104 S.E. 358; *Willis v. Trust Co.,* 183 N.C. 267, 111 S.E. 163; *Ziegler v. Love,* 185 N.C. 40, 115 S.E. 824; *Vinson v. Gardner,* 185 N.C. 193, 116 S.E. 412; *Amer. Yarn Co. v. Dewstoe,* 192 N.C. 121, 133 S.E. 407; *Henderson v. Power Co.,* 200 N.C. 443, 157 S.E. 425; *Turpin v. Jarrett,* 226 N.C. 135, 37 S.E. 2d 124.

In the case of *Rees v. Williams, supra,* the testatrix devised to her daughter, Jennie Lee, a house and lot. If she had added nothing further, the devise would have been in fee simple. However, in another item of her will, she inserted this language: "In case my daughter Jennie Lee shall die leaving issue surviving her, then to such issue and their heirs forever; but if my said daughter Jennie Lee shall die without issue surviving her, then I desire said property to return to my eldest daughter, May Lee Schlesinger, and to my son, Harry Lee, to be equally divided between them, or to their heirs, share and share alike." On the appeal it was insisted that the dying of Jennie Lee without issue surviving was intended to mean "dying without issue surviving in the lifetime of her mother, the testatrix." The Court cited with approval the following statement from 1 Underhill on Wills, Sec. 348: "The rule which construes death without issue to mean death without issue prior to that of the testator is not favored by the courts. . . . In such a case, particularly where at the date of the execution of the will any of the primary devisees are unmarried, it may be fairly presumed that the testator had in contemplation a future marriage and birth of issue, and that, intending to keep the property in his family, he meant a death without issue to take place after his death. If, therefore, the primary devisees survive him, they take an estate in fee which is defeasible by their subsequent death without issue." The Court said further, in connection with the contention that "dying without issue" meant "dying without issue in the lifetime of the testatrix": "In order to sustain such construction, we must interpolate words by adding to those in the will, that is 'dying with or without issue' the following, 'in my lifetime,' instead of adopting the natural meaning, which her own language conveys and which does not so limit the devise."

Also, in *Galloway v. Carter, supra,* the testator devised to his wife certain lands for life and then devised separate tracts of land in fee simple to each of his four sons and three daughters. Thereafter, he inserted the following: "My will further is, that if any, or either of my children, should die without leaving issue at his, or their death, the share or shares of him, or them, so dying (as well the accruing as the original share), shall be, go over and remain to the surviving brothers and sisters, and the child or children of such of them as may be then dead, equally to

be divided between them, share and share alike; but the children of my
deceased child shall, in such case, represent their parents, respectively,
and take in families." One of the daughters died without leaving issue.
It was contended that the testator intended that "dying without issue"
should have application and operative effect only in case one or more of
his children died in his lifetime, after the execution of his will; and that
his daughter Mary, having survived him, took her devise in fee simple.
The Court did not concur in this contention, but said: "It will be
observed, that the testator first makes provision for his wife, and then for
his children, severally, and in order, giving each in severalty, certain
lands in fee, besides slaves and other personal property. . . . Now, in
our judgement, the testator of the will under consideration, intended . . .
to render the estate and title of the property devised and bequeathed to
his several children, defeasible, and to provide that, in case anyone or
more of them should die at any time after the death of the testator, with-
out leaving issue living, at his, her or their death, respectively, the
property so devised and bequeathed including any that might have
accrued under the clause, should at once, upon his, her or their deaths
respectively, at any time, go over to, and become the property of, the sur-
viving brothers and sisters, and the child or children of such of them as
may then be dead, equally to be divided among them, share and share
alike, the children of any deceased child representing their parents respec-
tively, and taking as families."

And in the case of *Buchanan v. Buchanan, supra,* the testator devised
to his son Richmond all the remaining part of his property not otherwise
disposed of in his will, but added, "should Richmond die without bodily
heir, it is my will and desire that my son Andrew should have it all."
Richmond died after the death of Andrew, and without issue. It was
contended that since Richmond survived the testator, he took a fee simple
title to the devised lands. The Court, as in the case of *Galloway v.
Carter, supra,* did not sustain the contention, but said: "Unless, then,
the gift be to two tenants in common, with a clause of survivorship,
which, for the forcible reasons given in *Hilliard v. Kearney,* confines
the limitation over to a death occurring in the testator's lifetime; or there
is an intent apparent in the will or inferable from its other provisions,
to restrict the contingent event to the testator's life, we see no sufficient
reasons for qualifying the words 'dying without issue,' by adding what
he does not say, that the 'dying' must be before he dies himself. . . . The
testator, in the will before us, limits the property to one son upon the
death of the other without issue, and with no other qualifying restrictions.
How then, by construction, can such a restriction as requires the death
to occur before the death of the testator be introduced into the clause and
it be made to speak what the testator has not said?"

Now, let us examine the will of the testator in the light of G.S. 41-4, and the cited cases. All the land involved was devised to his wife for life. Then he said, "At the death of my wife, the land hereinafter described of which I may die seized and possessed, shall be divided among my living children, and if one of them is dead, leaving children then their children shall have the share of their parent."

In Item Six of the will the testator said, "I have had all my land except the lots in Knightdale . . . mapped and platted by . . . County Surveyor, which map I have caused to be recorded in the Book of Maps in Wake County, and for the description and boundaries of the land herein devised, I make and constitute this map a part of this my last will and testament."

In the Eighth Item of his will, the testator devised the lots in Knightdale to his sons, Nymphus Green House, Ezra Lyman House, and Harper Hillman House, in fee simple, with a further statement that "they may divide said lots equally among themselves or, if they desire, they may sell said lots to the highest bidder or at private sale and divide the money equally among themselves."

The testator divided his other land among his nine living children and set out each tract in Item Seven of his will, and follows the description of each tract with the following statement: "I give this tract of land to my (naming a son or daughter) as provided in Item Five as hereinbefore set out."

An examination of Item Five of the will discloses that the only part thereof that refers to all nine of his living children is the first sentence therein. It appears from the will that four of the testator's five daughters were married at the time of its execution, and that one son, James Rufus House, and the one unmarried daughter, now Mrs. Louis Estelle Richards, wife of D. E. Richards, were not mentioned by name in Item Five of the will.

Therefore, if we adopt the appellants' view in this case, we must find that the testator intended to make the fee defeasible only during the life of the life tenant, and then only as to his daughters. In this connection, it is important to note that the question of survivorship is not involved in the respective devises contained in Item Seven and the first part of Item Five of the will. The land is not devised to his nine children as tenants in common, to be divided among those surviving at the death of the testator or the life tenant. The land was divided by the testator, described by metes and bounds, and eight of his nine children were given his or her share in severalty, and in fee simple, subject only to the life estate of the testator's widow. The other one was given a life estate with remainder to her children. Then he proceeded to insert the controversial part of his will: "My daughters, to wit: Dorcas Anne Sealey, wife of

Wade Sealey, Martha Virginia Paschal, wife of Edward Paschal, Otelia Sunshine Ferrell, wife of Walter Ferrell, on the death of their mother shall have their shares of the land herein bounded and described in fee simple forever"; and added a similar statement as to three of his sons. He then added the following sentence: "And if either one of my daughters shall die without issue, their share of the land shall be equally divided among these three sons." It would seem reasonable to infer from the testator's will as a whole, that it was his intent to give the three daughters named above, as well as his unmarried daughter, a fee simple title forever, unless they died without issue. But we think it is equally clear that he intended the fee to be defeasible upon the death of any or either of these daughters, without issue, regardless of the time of their death. Moreover, we think the language used in connection with the death of the wife is significant. "At the death of my wife, the land . . . shall be divided among my living children, *and if one is dead,* leaving children then these children shall have the share of their parent." But he did not say, *"if one of them is dead without children,* their share shall go to thus and so." But, on the contrary, after reaffirming the character of the estate devised to six of his nine children, which he intended for them to have and possess at the death of their mother, he then added, "And if either one of my daughters (which would include all five of his daughters) shall die without issue, their share of the land shall be equally divided among these three of my sons." We think it is clear that the testator intended that none of his daughters should have an indefeasible fee in the devised property. Apparently he intended to keep the devised tracts of land in his family. *Rees v. Williams, supra.* For it is apparent that one daughter had children at the time of the execution of the will, and the testator limited her estate to one for life and devised the remainder to her children.

Furthermore, it was provided in Item Seven of the will, that if the husband of Martha Virginia Paschal, did not make full settlement with the testator of all their business transactions before his death, then the devise to her would be null and void; and her share was to be sold and divided among all his children.

Doubtless the testator felt that the discrimination made against his five daughters, in favor of three of his sons, might result in litigation. Therefore, about two years after the execution of his will, he added a codicil, as follows: "If one or more of the devisees under my will above mentioned, shall bring suit to break and set aside my last will and testament, or any portion thereof, I revoke any gift and devise which I may have made to such devisee or devisees in my said last will and testament, and direct that such devisee or devisees shall not take anything whatsoever under my said last will and testament, and the same shall be equally

divided among those devisees who do not bring suit to break and set aside my said last will and testament."

Construing the will as a whole, in light of the provisions of G.S. 41-4 and the cited authorities, leads us to the conclusion that Martha Virginia Paschal took the property in controversy, in fee, defeasible upon her dying without issue before or after the death of the life tenant, and we so hold. *Henderson v. Power Co., supra; Patterson v. McCormick, supra; Kirkman v. Smith,* 175 N.C. 579, 96 S.E. 51; *Rees v. Williams, supra; Perrett v. Bird, supra; Harrell v. Hagan,* 147 N.C. 111, 60 S.E. 909; *Buchanan v. Buchanan, supra.*

The case of *Whitley v. McIver, supra,* upon which the appellants are relying, presented a different factual situation. No intermediate estate was created or an estate by way of remainder or executory devise, but the limitation over was by way of substitution. Therefore it was held, and properly so, that the "vesting in any event was to take effect and become absolute at the death of the testatrix."

The judgment of the Court below is

Affirmed.

BARNHILL, J., dissenting: The majority conclude that the judgment entered in the court below should be affirmed. In this conclusion I am unable to concur. As the correct application of cardinal rules of construction of wills is involved, I feel compelled to express my views on the question presented. This may not be done intelligently except at the expense of repetition of matters contained in the majority opinion.

Thomas Wesley House died testate, seized and possessed of certain land in Wake County. He had five daughters and four sons who survived him. One daughter, Martha Virginia Paschal, survived the testator and his widow, the life tenant, but died without issue in June, 1948. Who now owns her share in the estate is the question involved.

Item Five of the will, which is the battleground of the controversy, is quoted in the majority opinion.

The one real determinative question posed by the appeal is this: Does the last sentence of the first paragraph of Item Five, to wit, "And if either one of my daughters shall die without issue, their share of the land shall be equally divided among these three of my sons," provide and describe alternate devisees who shall answer at the roll call in the event one of the daughters is then dead and without issue, or does it limit the estate devised to the daughters?

If it limits the estate devised, then the majority conclusion is correct. But I adhere to the view that it is a part and parcel of the description of the ultimate takers. It provides a condition or contingency attached to the right to answer when the roll is called. If the majority are correct,

then we write out of the will and render utterly meaningless the provision therein that the three named daughters "shall have their shares of the land . . . in fee simple forever." If my construction of the language used is sound, then this provision is given full force and effect. Every word is accorded its ordinary meaning and no part is rejected. *Williams v. Rand*, 223 N.C. 734.

What did the testator intend? The dominant purpose in the interpretation of a will is to discover this intent and give it effect unless it runs counter to some established rule of law or is at variance with public policy. *Schaeffer v. Haseltine*, 228 N.C. 484; *Smith v. Mears*, 218 N.C. 193, and cases cited.

In ascertaining this intent, no word ought to be rejected if any meaning can possibly be put upon it. *Schaeffer v. Haseltine, supra; Bank v. Corl*, 225 N.C. 96; *Holland v. Smith*, 224 N.C. 255. Apparently repugnant clauses should be reconciled and effect given, where possible, to every clause, phrase, and word. *Williams v. Rand, supra*.

In order to ascertain and effectuate the intent of the testator or reconcile or eliminate apparently inconsistent or repugnant provisions, it is permissible for the Court to transpose words, phrases, or clauses of the will. *Heyer v. Bulluck*, 210 N.C. 321; *Williams v. Rand, supra*.

Applying these cardinal principles of construction in seeking the intent of the testator as expressed in Item Five of his will, every word, phrase, and clause thereof may be given full force and effect, consistent with every other part of the will.

It is apparent that to ascertain who shall take as remaindermen the roll must be called at the death of the life tenant. "When the gift to the survivors is preceded by a particular estate for life or years, words of survivorship, in the absence of anything indicating a contrary intention usually refer to the termination of the particular estate." The period of division is the death of the tenant for life. *Jessup v. Nixon*, 193 N.C. 640; *Whitley v. McIver*, 220 N.C. 435; *Bradshaw v. Stansberry*, 164 N.C. 356; *Mercer v. Downs*, 191 N.C. 203.

In seeking the intent of the testator, it must be noted that the crucial sentence relates to all five daughters—not merely to the three who are to take their shares in fee. The sentence, therefore, is not couched in terms to indicate the testator was referring to the fee estate devised to the three named daughters, but to those who should answer at the roll call in the event any one of his daughters was then dead without issue surviving.

While the testator desired his real property to go to his five daughters and four sons, he knew that all of them might not be living when the roll was called. He made provision against this contingency. His property was to be divided, at the death of his widow, among his living children. If any child should die before the roll call, leaving children, then

the children should answer and take their parent's share. If any one of his daughters should then be dead and without issue, the three named sons should answer in her stead and take her share. One daughter, Meta Mason Straughan, should take only a life estate, with remainder to her children.

It has been suggested, however, that no provision was made against the contingency that a son might die without issue and therefore the last sentence in the first paragraph of Item Five may not be deemed a description of devisees. But this is not the case. Survival was the condition on which the right of the sons depended.

Thus, in my opinion, Item Five of the will should be construed to read in this manner: "At the death of my wife, the land hereinafter described of which I may die seized and possessed, shall be divided among my living children, and if one or more of them is dead, leaving children, then these children shall have the share of their parent. If any one of my daughters shall be dead and without issue, their share of the land shall be equally divided among my sons, Nimfus Green, Ezra Lyman, and Harper Hillman. My daughters, Dorcas Anne, Martha Virginia, and Otelia Sunshine, and my sons, Nimfus Green, Ezra Lyman, and Harper Hillman, shall have their shares of the land herein bounded and described in fee simple forever. My daughter Meta Mason Straughan shall have a life estate with remainder over to her children in fee simple."

As so construed, every part of the will harmonizes; every word and phrase is given force and effect. The presumption in favor of the first taker prevails, *Smith v. Creech,* 186 N.C. 187, *Dunn v. Hines,* 164 N.C. 113, and the express provisions of the statute, G.S. 31-38, are observed. *Smith v. Creech, supra.*

If the last sentence in the first paragraph of Item Five is construed to limit the estate devised, such construction not only nullifies a pertinent and material provision of the will and has the testator declaring that he desires his daughters to hold their estate in fee and in the next breath limiting that very estate to a defeasible fee, but also converts every devise, save one, into a defeasible fee.

Rejection of any part of the will is the last resort and it must be imperative. *Rees v. Williams,* 165 N.C. 201.

Why should the testator be so careful to define the quality of the estate devised to these three daughters if he did not mean it? If he meant it, then why should we not adopt that reasonable construction of the will which effectuates that intent? Martha Virginia Paschal was living when the roll was called. She took her share in fee. The contingency, upon the happening of which the three sons were to answer in her stead, never occurred. They, as devisees, took no part of her share.

It cannot be said that the testator, by the contested provision, was seeking to keep his land in his own line of descent, for if a daughter should die without issue, her husband, if any, would take nothing. The land, in any event, would descend to her brothers and sisters or their lineal descendants.

The codicil provision against any contest of the will was not aimed exclusively at the daughters. It applies to all devisees alike.

If we accept the premise that the crucial sentence in Item Five necessarily qualifies the estate devised to the three daughters, then the cases cited in the majority opinion are pertinent and controlling. As I cannot accept that premise as the basis of decision, they, in my opinion, have no bearing on the question presented.

Therefore, for the reasons stated, I vote to reverse.