286 F.2d 251
 CABARRUS BANK AND TRUST COMPANY, as Surviving Executor and Trustee under the Last Will and Testament of Emma F. Whitman, deceased, Defendant, and Arthur Lee Padgett, Jr., and First & Merchants National Bank of Richmond, Virginia, as Executors and Trustees under the Last Will and Testament of Norwood K. Whitman, deceased, Defendants-Interveners, Appelpellants,
v.
H. Lee FINLAYSON, Jr., Plaintiff, Appellee.
 No. 8132.
 United States Court of Appeals Fourth Circuit.
 Argued October 19, 1960.
 Decided January 6, 1961.
 
 William J. Adams, Jr., Greensboro, N. C. (Robert H. Patterson, Jr., Richmond, Va., Adams, Kleemeier & Hagan, Greensboro, N. C., and McGuire, Eggleston, Bocock & Woods, Richmond, Va., on the brief) for appellants Arthur Lee Padgett, Jr., and others.
 E. T. Bost, Jr., (W. H. Beckerdite, Concord, N. C., on the brief) for appellant Cabarrus Bank and Trust Co.
 Beverly C. Moore, Greensboro, N. C. (Richmond G. Bernhardt, Jr., Greensboro, N. C., Charles Lathrop Reed, John W. Edmonds, III, Richmond, Va., Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., and Tucker, Mays, Moore & Reed, Richmond, Va., on the brief), for appellee.
 Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 This case calls for the interpretation of certain provisions of the will of Hattie Lee Finlayson of Goldsboro, Wayne County, North Carolina, who died in 1925, whereby the testatrix devised and bequeathed certain property to her daughter, Emma Finlayson (Cannon) Whitman, but specifically provided that if her daughter should die without children the property left to her would be divided amongst the children of the son of the testatrix, H. Lee Finlayson. The son died on September 8, 1937, leaving the plaintiff, H. Lee Finlayson, Jr., as his only surviving child. The daughter, who was born in 1890, was married to E. T. Cannon until January 19, 1938, and was thereafter married to Norwood K. Whitman until her death in August, 1957. No child was ever born to her of either marriage and hence upon her death the present suit was brought by H. Lee Finlayson, Jr. to establish his right to the property left by the testatrix to her daughter upon condition as aforesaid. The suit was resisted by the executors and trustees under the will of the daughter and by the executors and trustees under the will of her husband, Norwood K. Whitman.
 
 
 2
 The portions of the will pertinent in this dispute are as follows:
 
 
 3
 "3rd. My National Oil Stock Company [sic] is to be equally divided between my husband, H. L. Finlayson, daughter Emma Finlayson Cannon, and son H. Lee Finlayson.
 
 
 4
 "5th. All other stocks, bonds, and real estate to be divided equally between my daughter, Emma Finlayson Cannon, and my son H. Lee Finlayson.
 
 
 5
 "8th. I want my husband to wear my wedding ring on his watch chain. My son H. Lee Finlayson to have my largest solitaire diamond ring. My daughter in law Rosalie Harwood Finlayson, my dinner ring. My daughter all other jewelry during her natural life. At her death my larvilier [lavaliere], two stone diamond ring and diamond watch to my niece and namesake, Hattie Lee Bordon. The other jewelry to be sold, money received from same to be given my grandson, H. Lee Finlayson, Jr., unless he wants the jewelry to wear himself.
 
 
 6
 "10th. Should my daughter die without children what I have bequeathed to her is to be divided between children of my son H. Lee Finlayson. Should she leave children all jewelry is to be theirs, and bequests made above except Rosalie Harwood Finlayson ring, this is to be given her regardless."
 
 
 7
 The theory of the defendants is that the provision of paragraph 10 of the will, that the children of the son should take the property left to the daughter if the daughter should die without children, refers to the death of the daughter during the life of the testatrix; and since the daughter survived the testatrix her title to the property became absolute. The judge rejected this theory and held that the will referred to the death of the daughter at any time without children and hence the plaintiff was entitled to the property left to the daughter. See Finlayson v. Cabarrus Bank & Trust Co., D. C.M.D.N.C., 181 F.Supp. 838.
 
 
 8
 There is, of course, no question that the will should be construed in accordance with the law of North Carolina and that under the rule prevailing in that State and elsewhere the intention of the testator is the prime object of the inquiry and all clauses of the will should be reconciled if possible so as to give full effect to the testator's wishes. Woodward v. Clark, 234 N.C. 215, 66 S.E.2d 888; Roberts v. Sanders, 192 N.C. 191, 134 S.E. 451.
 
 
 9
 Plaintiff's contention that the interest taken by Emma F. Whitman under her mother's will passed to him, under the provisions of paragraph 10 when she died without children, finds strong support in the following section of the General Statutes of North Carolina:
 
 
 10
 "§ 41-4. Limitation on failure of issue. — Every contingent limitation in any deed or will, made to depend upon the dying of any person without heir or heirs of the body, or without issue or issues of the body, or without children, or offspring, or descendant, or other relative, shall be held and interpreted a limitation to take effect when such person dies not having such heir, or issue, or child, or offspring, or descendant, or other relative (as the case may be) living at the time of his death, or born to him within ten lunar months thereafter, unless the intention of such limitation be otherwise, and expressly and plainly declared in the face of the deed or will creating it: Provided, that the rule of construction contained in this section shall not extend to any deed or will made and executed before the fifteenth of January, one thousand eight hundred and twenty-eight."
 
 
 11
 This statute was enacted in 1827 to meet the rule then generally prevailing in this country that a gift over on "death without issue" in a deed or will meant an indefinite failure of issue and hence was void for remoteness. To remedy this situation statutes similar to that of North Carolina were passed in a number of states whereby the defect was cured by directing that such a phrase in a deed or will should be interpreted as a limitation to take effect when such person dies not having such heir, issue, or child living at the time of his death. See the discussion in Restatement of Property, § 266, Comment b, p. 1340. The primary purpose of the enactment was not to abrogate the rule which favors the early vesting of estates, but it has been given that effect under certain circumstances in the North Carolina decisions.
 
 
 12
 In Buchanan v. Buchanan, 99 N.C. 308, 5 S.E. 430, 431, the court referred to the statute in interpreting the following provision of a will:
 
 
 13
 "I give and bequeath to my son Richmond all the remaining part of my property * * * and, should Richmond die, without a bodily heir it is my will and desire that my son Andrew should have it all."
 
 
 14
 In answer to the contention that if Richmond outlived the testator he took the property absolutely, the court said (99 N.C. 308, 311, 5 S.E. 430, 432):
 
 
 15
 "* * * The devise is of an estate in fee to Richmond, terminable at his decease without issue, and, in such event, passing over and vesting in Andrew. No time is fixed for the executory devise over to take effect, except that it must be at the death of his brother, whenever this shall occur, under the specified condition of his being `without a bodily heir,' or childless; and to this the act of 1827 adds, `living at the time of his death.' Code, § 1327. Without the aid of the statute, the concurrent rulings of the courts are that such a limitation being upon an indefinite failure of issue, that is, whenever such issue ceases to exist, is void for remoteness, to prevent which the enactment, alike applicable to wills and deeds, was made, when no contrary intent is manifest. Thereby the limitation over is made effectual, or fails at the death of the first taker, and the result is then determined. * * *"
 
 
 16
 * * * * * *
 
 
 17
 "The testator in the will before us limits the property to one son upon the death of the other without issue, and with no other qualifying restrictions. How, then, by construction, can such a restriction as requires the death to occur before the death of the testator be introduced into the clause, if it be made to speak what the testator has not said? Does not the testator intend that Andrew shall have all if Richmond dies, and whenever he dies with no child to succeed him? * * Annex the explanatory words of the statute * * * so that it will read, `Should Richmond die without a bodily heir, not having such heir living at the time of his death' can there be any serious doubt as to the meaning of the clause, and especially when the act declares that the ulterior limitation shall then take effect? If it ties up the contingency to the death, as an independent fact, so as to avoid too remote a limitation under former rulings, why should it not equally exclude an interpretation which refers to an earlier period for the vesting?" 99 N.C. 308, 318, 5 S.E. 430, 435.
 
 
 18
 The statute was also applied in Rees v. Williams, 165 N.C. 201, 81 S.E. 286, to support the view that the first taker did not take a fee simple absolute upon the death of testatrix. In the Rees case, the will left property to the daughter but another item provided that if she "shall die leaving issue surviving her, then to such issue and their heirs forever," but if she "die without issue surviving her, then the property to return to my eldest daughter * * * and to my son * * *." The daughter contended that, upon the death of the testatrix her estate was released from the contingency and made absolute. In rejecting this contention the court noted (165 N.C. 201, 207, 81 S.E. 286, 288-289):
 
 
 19
 "There are cases decided in this court which seem to sustain the plaintiffs' view that the first taker will get a fee absolute at the death of the testator, if he survives so long; but they are cases where the wills were executed prior to 1827, or are founded upon the principle stated in Hilliard v. Kearney, 45 N.C. 221, as to survivorship between tenants in common. More recent decisions are to the effect that in such limitations the term `dying with or without issue' refers to a death at any time, whether before or after the testator's death, and they are based, at least principally, upon the change in the law which was made by the act of 1827 * * which requires limitations of this kind to be so interpreted as to take effect when the first taker shall die, not having issue living at the time of his death, and this, of course, without reference to the time when such death may occur. The clear and exact meaning of this statute, and its direct application to a state of facts such as we have here, was decisively set at rest in the case of Buchanan v. Buchanan, 99 N.C. 308, 5 S.E. 430, * * *"
 
 
 20
 The same question was in issue in Patterson v. McCormick, 177 N.C. 448, 99 S.E. 401, where the will, after leaving certain property to the testator's mother for life, provided that after her death it should be divided equally between his nephews, John D. and Clem Jowers. The will went on to provide:
 
 
 21
 "In case they or either of them die without issue, it is my will that the property herein bequeathed shall go to the heirs of Arch'd and Gilbert Patterson and to the surviving brother John D. or Clem Jowers, as the case may be, to be equally divided between them."
 
 
 22
 It was maintained that upon the death of the life tenant, the mother of the testator, the entire estate was to be divided between John and Clem Jowers and then vested absolutely and unconditionally in them, they both having outlived the life tenant. The court, relying upon the statute of 1827, rejected this position and commented as follows (177 N.C. 448, 452, 99 S.E. 401, 402):
 
 
 23
 "The statute of 1827 changed the principle, making the limitation `dying without issue' void for remoteness and abrogated the rule of construction which applied it to an intermediate period. This statute applied to all limitations contingent upon dying without issue, and is not restricted to those where there is no intermediate estate. The language is `every contingent limitation' and there is no exception from its operation.
 
 
 24
 "The statute also establishes a new rule of construction and fixed as the time for dying without issue `when such person shall die' and in this case John and Clem or one of them.
 
 
 25
 "This rule laid down by the statute is obligatory on the courts, and must be observed in all cases except, as provided by the statute, when a contrary intent is `expressly and plainly declared in the face of the deed or will.' And we find no such contrary intent in the will before us."
 
 
 26
 * * * * * *
 
 
 27
 "The act of 1827 has been construed by this court at least 26 times, beginning with Tillman v. Sinclair, 23 N.C. 183 (decided in 1840), and ending with Kirkman v. Smith, 175 N.C. 579, 96 S.E. 51, and in every case in which it has come before the court for construction it has uniformly been held that `dying without heirs or issue,' upon which a limitation over takes effect, is referable to the death of the first taker of the fee without issue living at the time of his death, and not to the death of any other person or to any intermediate period. * *" 177 N.C. 448, 455, 99 S.E. 401, 404.
 
 
 28
 In accord with the cases set out above is the recent decision of the North Carolina Supreme Court in House v. House, 1949, 231 N.C. 218, 56 S.E.2d 695, 696, where the effect of the statute was carefully considered. There the testator had devised land in fee simple to his three daughters should they survive their mother, the life tenant. The problem in construction was raised by another item of the will which provided "and if either one of my daughters shall die without issue, their share of the land shall be equally divided among these three of my sons." The court said that, in the absence of a plainly expressed intention to the contrary appearing in the will, the words must be construed in the light of the act of 1827, General Statutes, § 41-4. The court did not find any such intention and concluded that the daughter took the property in controversy in fee, defeasible upon her dying without issue before or after the death of the life tenant. In the course of its opinion it cited the following statement from 1 Underhill on Wills § 348 (231 N.C. 218, 222, 56 S.E.2d 695, 698):
 
 
 29
 "The rule which construes death without issue to mean death without issue prior to that of the testator is not favored by the courts. * * * In such a case, particularly where, at the date of the execution of the will, any of the primary devisees are unmarried, it may fairly be presumed that the testator had in contemplation a future marriage and birth of issue, and that, intending to keep this property in his family, he meant a death without issue to take place after his death. If, therefore, the primary devisees survive him, they take an estate in fee which is defeasible by their subsequent death without issue."
 
 
 30
 In opposition to this very clear and strong statement of the rule in the cases cited above, the defendants rely upon four decisions of the Supreme Court of North Carolina, namely, Goode v. Hearne, 180 N.C. 475, 105 S.E. 5; Dupree v. Daughtridge, 188 N.C. 193, 124 S.E. 148; Westfeldt v. Reynolds, 191 N.C. 802, 133 S.E. 168; Whitley v. McIver, 220 N.C. 435, 17 S.E.2d 457. These decisions did not undertake to repudiate the current of authority discernible in the cases above, and indeed they were decided prior to the outstanding decision in House v. House, 231 N.C. 218, 56 S.E.2d 695, 696. In Goode v. Hearne and Dupree v. Daughtridge the will provided for gifts to children of the testator with the direction that in the event of their death their children should inherit their parents' share and it was held that the testator's children took an absolute estate in the property devised since they survived the testator. These cases may perhaps be distinguished on the ground that the will did not provide for a gift over in the case of "death without issue" but for a gift over in case of "death," and hence might be interpreted to provide for a gift in substitution rather than in succession. See the discussion in Restatement of Property, § 263, p. 1318, where reference is made to the confusion which exists in the law because of a failure to distinguish between gifts over on "death" simply and gifts over on death coupled with a collateral event such as "death without issue."
 
 
 31
 Substantially similar were the circumstances in Whitley v. McIver, supra, which considered a devise of property to four children in equal proportions but in case of the death of a child his share was to go to his children. This also was held to be a limitation by way of substitution with a view to guarding against failure by lapse. No reference was made to the statute.
 
 
 32
 In Westfeldt v. Reynolds there were two dispositions of property, the first of which was substantially similar to that described in the foregoing cases, and it was held that since the devisee named in the will survived the testatrix her interest under the will was absolute. The other disposition in the will provided that if the legatee should die without issue surviving her, her interest should go over to the children of another; and it was held also that her interest became absolute since she survived the testatrix unless it was prohibited by the statute of 1827. The court then went on to consider other provisions of the will, which indicated that the case fell within the exception to the statute, since they clearly showed a contrary intent on the part of the testatrix.
 
 
 33
 We reach the conclusion that the North Carolina statute as interpreted by the Supreme Court of the State requires the determination that Emma Finlayson Whitman, the daughter of the testatrix, took only a defeasible title to the property described in the 3rd and 5th paragraphs of the will, which terminated upon her death without children, unless it can be said, as argued by the defendants, that the case falls within the exception in the statute. This provides that the contingent limitation in the will shall take effect when the person dies without children living at the time of her death, "unless the intention of such limitation be otherwise, and expressly and plainly declared in the face of the deed or will creating it." The defendants argue that the entire will reflects the intention that the daughter should have an interest in the property described in paragraphs 3 and 5 equal to that given to the other persons mentioned therein. This is of course true when these paragraphs are read separate and apart from the other portions of the instrument, but it ignores the clear provision in paragraph 10 that the property bequeathed to the daughter should go to the children of her brother if she should die without children. The purpose of the testatrix undoubtedly was to keep the daughter's share of the property in the family if she should remain childless, as she was during her mother's lifetime.
 
 
 34
 Defendants also make the point that in paragraph 8 of the will, in which certain articles of jewelry were specifically bequeathed, the testatrix expressly provided that the remainder of the jewelry should go to her daughter for her natural life, and it is contended that she would have used a similar expression with respect to the other property if she had wished the daughter to take only a life estate therein. It would have been inappropriate however, as pointed out by the District Judge, to use such language with respect to the other property since the testatrix did not mean to give her daughter merely a life estate therein but an absolute estate, subject to being defeated, if she should die without children.
 
 
 35
 Again the defendants base an argument on the provision in paragraph 10 of the will that should the daughter leave children "all jewelry is to be theirs, and bequests made above * * *." The defendants maintain that the words "bequests made above" refer to all the devises and bequests previously given to the daughter in the will. They say that taken by itself the language in paragraphs 3 and 5 gives an absolute estate in the property described to the daughter, whereas paragraph 10 taken by itself seems to give the daughter only a life estate in the "bequests made above," since it provides that upon her death these bequests go to the children. Hence, they argue, paragraph 10 can only be given effect if the daughter predeceased her mother, for otherwise it would conflict with paragraphs 3 and 5.
 
 
 36
 The argument is involved to say the least and certainly does not suggest an intention "expressly and plainly declared" as is required to bring the case within the exception in the statute. Moreover, a more reasonable interpretation of paragraph 10 is that the clause "should she leave children all jewelry is to be theirs, and bequests made above" has reference to the jewelry described in paragraph 8, which is left to the daughter for life with remainder as to specific items to certain named persons. The testatrix might well have intended that if her daughter died leaving children, all of the jewelry left to the mother for life (with one exception) should go to them upon her death, in which event the bequests of jewelry in remainder would not be effective.
 
 
 37
 The judgment of the District Court is affirmed.
 
 
 38
 Affirmed.